PARISH, Appellant, vs. REEVE and another, Respondents.

*April 29 — June 1, 1885.*

*(1) Deed absolute or mortgage: Evidence. (2) Principal and agent: Ratification of contract: Estoppel to deny authority. (3) Payment: Evidence. (4) Reference to assess damages from injunctional order.*

| | |
|---|---|
| 63 | 315 |
| 88 | 487 |
| 63 | 315 |
| 94 | 242 |
| 63 | 315 |
| 114 | ⁴372 |

1. Upon the evidence in this case (showing, among other things, that after certain liens, etc., were discharged the balance of the stipulated purchase price was to be paid to the grantor), a deed absolute in form is *held* not to have been intended as a mortgage.
2. A principal who, after knowledge of the terms of a sale made by the agent, does not disaffirm but accepts and enjoys all the benefits thereof, cannot afterwards deny the authority of the agent to make the sale upon those terms.
3. Findings of the trial court as to payments of the purchase price of land are *held* to be sustained by the evidence.
4. Where a preliminary injunction was improperly granted, the party enjoined, after a judgment on the merits in his favor, may have a reference to assess his damages sustained by reason of such injunction.

APPEAL from the Circuit Court for *Sheboygan* County.

The complaint alleges that the plaintiff, a married woman, in 1872 purchased certain premises in the city of Appleton and has since occupied them as her homestead; that on October 27, 1881, there were three mortgages on said property upon which there was due and unpaid about $1,880; that her husband was then indebted to the defendant *Reeve* and one Hutchinson in the sum, as they claimed, of about $680, and that he was unable to pay or secure said debts; that his said creditors proposed to him that he should induce the plaintiff to give to said defendant, *Reeve*, a deed of the premises above mentioned at the agreed price of $3,000; that as part of such purchase price *Reeve* was to pay the amount due on said three mortgages, and to pay to Hutchinson the amount alleged to be due to him from plaintiff's husband, and to give to her said husband a release of the debts claimed to be due to said *Reeve;* that the balance of the purchase price was to be paid to the plaintiff, and that she should have possession of the premises for one year on paying the taxes, or in lieu thereof $5 per month, and that she should have the right to redeem the property at any time within the year.

It is further alleged that the plaintiff had no part in negotiating said sale, and that, except as hereinafter stated, the terms and conditions thereof were unknown to her when she signed the deed; that she never authorized her husband to make such sale, or ratified such agreement; that her husband informed her that the deed was to be given to secure the mortgage debt, and that the difference between that and the purchase price was to be immediately paid to her, and that she was to have one year to redeem by paying the purchase price and taxes; and that on October 27, 1881, she was induced to sign the deed, believing that the difference aforesaid, being about $1,120, was to be paid to her, and that she was to have time to redeem as aforesaid; that

she never consented to the payment of her husband's indebtedness out of said purchase price.

The complaint further alleges that the defendant *Reeve* has never paid her any portion of said purchase price; that the value of the property was $3,500; that in August, 1882, *Reeve* brought an action of unlawful detainer against the plaintiff, and obtained judgment against her and a writ of restitution directed to the defendant *Golden*, commanding him to remove her from said premises, and that said *Golden*, as sheriff, now holds said writ and threatens to enforce it.

The relief demanded is that the deed of October 27, 1881, be adjudged to be a mortgage; that the plaintiff have the right to redeem the premises; that the right of possession be adjudged to be in her; and that the defendants be enjoined from enforcing the judgment obtained in the action of unlawful detainer.

The answer, besides denials, alleges that at the date of the deed the plaintiff and her husband were owing debts secured by mortgages and tax liens on the premises to the amount of at least $2,267, and unsecured debts as follows: a note made by plaintiff to the defendant *Reeve*, and indorsed by him and one Beveridge for her accommodation, and afterwards paid by said defendant, $284.50, the account of Hutchinson & Co., $325, and the account of said defendant, $100; that the purchase of the land by said defendant was absolute and was upon the conditions that he should satisfy all of the above-mentioned indebtedness, and should pay the balance, if any, of the purchase price to the plaintiff; that the plaintiff knew and well understood, at the time, all the terms and conditions of the sale; that said defendant has duly tendered to the plaintiff the balance due to her according to such terms and conditions, and that she refused to accept the same.

A temporary injunctional order was granted to the plaintiff. The view taken by this court of the evidence will

appear from the opinion. The circuit court found as facts: (1) That the conveyance of October 27, 1881, was an absolute deed and not a mortgage. (2) That the defendant, *Reeve*, has paid all the consideration agreed to be paid, except $200, which sum, with interest, is due to the plaintiff. (3) That said defendant had tendered such sum to the plaintiff, but has not kept the tender good by payment of the same into court. (4, 5) That said defendant had obtained a judgment for the premises and a writ of restitution, as alleged in the complaint. (6) That the plaintiff was, on October 27, 1881, and has ever since been, in possession of the premises. (7) That the injunctional order was improperly issued and that the plaintiff was not entitled thereto.

As conclusions of law the court found that the relief prayed in the complaint should be denied, and the injunction dissolved; that the defendant *Reeve* was entitled to the possession of the premises; that the plaintiff recover from him the sum of $200, with interest; that said defendant is entitled to a referee to assess damages sustained by reason of the issuance of the injunctional order; and that neither party recover costs. From the judgment entered accordingly the plaintiff appealed.

*John Goodland*, for the appellant, contended, *inter alia*, that the judgment was erroneous in that it did not finally determine the rights of the parties, but left the damages from the injunctional order to be settled and determined by a second judgment. *Sellers v. Union L. Co.* 36 Wis. 398; *Massing v. Ames*, id. 409; *Singer v. Heller*, 40 id. 544; R. S. sec. 2882; *Garland v. McKittrick*, 52 Wis. 261.

For the respondent there was a brief by *John Bottensek* and *Henry D. Ryan*, and oral argument by *Mr. Bottensek*. To the point that the plaintiff, having accepted and enjoyed all the benefits of the bargain made by her agent, and, though fully informed, having failed to disaffirm his

acts, and having deliberately ratified a part of the contract even in her complaint in this action, cannot now be heard to deny the authority of the agent, they cited *Morse v. Ryan*, 23 Wis. 356; *Crans v. Hunter*, 28 N. Y. 389; *Elwell v. Chamberlin*, 31 id. 611; *Bennett v. Judson*, 21 id. 238; *Strasser v. Conklin*, 54 Wis. 102; *Paine v. Wilcox*, 16 id. 202; *Feild v. Farrington*, 10 Wall. 141–152; *Ladd v. Hildebrant*, 27 Wis. 135; *Saveland v. Green*, 40 id. 431; *Reid v. Hibbard*, 6 id. 175. As to the practice in assessing the damages sustained by reason of the injunctional order, they cited, besides the cases cited in the opinion, *Shearman v. N. Y. C. Mills*, 11 How. Pr. 269; *Pacific M. S. Co. v. Leuling*, 7 Abb. Pr. (N. S.), 37–41; 12 How. Pr. 170.

COLE, C. J. This is a case in equity; and if improper evidence was admitted on the trial that would afford no ground for a reversal of the judgment, if otherwise correct. In such a case the improper evidence is disregarded by this court, so the error in admitting it becomes immaterial.

Coming to the case on the merits, the first question to be considered is as to the nature of the conveyance of October 27, 1881, from the plaintiff and her husband to the defendant *Reeve*. Was that deed understood by the parties to it to be an absolute conveyance of the premises for the sum of $3,000, as found by the court below, or was it in the nature of a mortgage? The deed is absolute in form. But it is conceded that it was competent to show by parol testimony that it was given to secure a debt, and, in legal effect, was a mortgage, if such were the fact.

The evidence upon the question is somewhat conflicting, but the decided preponderance of proof supports the finding of the trial court. Even the complaint itself tends to sustain the conclusion that there was an absolute sale of the property, for the principal relief asked is that this conveyance be adjudged a mortgage, and that the plaintiff have

the right to redeem from such mortgage within a year after the payment to her of the sum of $1,120, or such other sum as the court may find to be equitably due her as *part of the purchase price of the premises.* There were tax liens and mortgages upon the property, which it is admitted the defendant assumed and discharged. The defendant *Reeve* claims that there were some other debts which were to be paid out of the purchase money, but this the plaintiff denies. Still, the fact that the plaintiff claims she was to receive the balance of the purchase money after all incumbrances were paid, is entirely inconsistent with the idea that the conveyance was understood to be a mere mortgage security on her part. There is no pretense that there was any loan made, but that the defendant had purchased the property for $3,000, and that the plaintiff was to have the right to redeem the premises within a year by paying the purchase price and taxes, or, in lieu of taxes, the sum of five dollars per month rent. The testimony of the defendant grantee is most explicit and unequivocal that the purchase was absolute, and the clear weight of testimony and all the probabilities of the case tend to show that it was. But we shall not further discuss the evidence upon this point. It is sufficient to say that the decided preponderance of evidence sustains the finding of the learned circuit court that the conveyance was an absolute deed in fact as well as in form.

Another question is, Was the husband of the plaintiff, who negotiated for her and as her agent transacted the business, authorized to make the sale upon the terms agreed upon? She does not really deny his authority to make a sale of the property, but says she never authorized him to make such a one as he did make. In her testimony she says, in effect, her husband told her he was unable to pay up the mortgage, and he thought it was best to sell the place and get what they could out of it; that *Dr. Reeve* would take the place at $3,000, and pay them the balance, aside from the

mortgage; that she expected to receive the balance of the money after the mortgages were discharged. She signed the deed, when presented to her, to carry out the sale which her husband had made. She did not object to the terms of the sale, or claim that her husband had exceeded his authority in making it. It appears he was her general agent, who transacted her business and signed her name to notes, etc. A few days after the sale she learned that *Dr. Reeve* claimed that the deed was an absolute conveyance, but she never notified him that she considered it simply a mortgage. On the contrary, she approved the arrangement, upon the supposition that they were to have a year to redeem the premises after the purchase money was paid. She knew she was to have a lease of the place for a year at five dollars a month. She appears to be quite willing to accept and enjoy all the benefits of the sale made by her husband,— even ratifies it in her complaint by asking that the defendant be adjudged to pay that part of the purchase price which is equitably due her. In view of these facts it seems to us the plaintiff cannot now claim that her husband had no authority to make the sale for her upon the terms and conditions he did.

The court found that the defendant *Reeve* has paid the consideration mentioned in the deed which he agreed to pay, except $200, which sum, with interest from October 27, 1881, is still due from him to the plaintiff. In arriving at this result it is claimed the court deducted from the purchase money certain debts which should not have been paid out of it, and that more was paid on one of the mortgages than was due upon it.

*First,* as to the Morse mortgage, which was an incumbrance on the property and had to be discharged. In respect to that mortgage we do not think the proof shows any overpayment. True, there is some conflict of testimony on the point, and an ingenious attempt is made by the

learned counsel to show there was not as much due upon it as was paid. We have carefully considered his argument and the evidence. But to our minds the testimony of the witness Darling is quite clear and satisfactory, and we see no reason to doubt the accuracy of his statements. He says no more was paid on that mortgage than was actually due thereon. The Beveridge note was one given by the plaintiff,— or by her husband, who signed her name,— and the defendant was a mere accommodation indorser. He had paid, or was liable to pay, the note. The proceeds of the note, we infer, were used to carry on the "notion business," which, as we understand, was in the name of the plaintiff. Presumably she had the benefit of that note, and it is but just that she should pay it. *Dr. Reeve* testified that by the terms of the sale the Hutchinson debt and his claim for professional services were to be allowed as part payment of the consideration money. It was, doubtless, on the strength of this testimony that the court considered that these claims should be deducted from the purchase price. Upon the evidence in this record it is impossible to say there was any error in allowing them. These are all the disputed items which were allowed.

A preliminary injunction was obtained in the suit, enjoining the defendant *Reeve* from interfering with plaintiff's possession of the premises, and to restrain the defendant *Golden* from enforcing a writ of restitution in his hands, as sheriff. The court held that this injunction was improperly granted, and ordered a reference to assess the damages which *Reeve* had sustained by reason of it. A question is made as to the regularity of this practice, but it seems to be authorized by sec. 2778, R. S. That section, in effect, provides, where the court finally decides that the party obtaining the injunction was not entitled to it, that the damages which the other party has sustained by reason of it may be ascertained by a reference, or other-

wise, as the court shall direct. It appears from the author-
ities cited by defendants' counsel that in New York, under
a similar statute, the practice has obtained, after a hearing
and rendition of judgment on the merits, in favor of the
party enjoined, that he may have a reference to assess his
damages sustained by reason of the injunction. See *Meth-
odist Churches v. Barker*, 18 N. Y. 463; *Jordan v. Volken-
ning*, 72 N. Y. 300; *Musgrave v. Sherwood*, 76 N. Y. 194;
*Loomis v. Brown*, 16 Barb. 325; 2 Wait's Pr. 122. We
can see no objection to the practice, and such is the obvious
intention of the statute. The court, on the report of the
referee, fixes the amount of damages. Here there is no
question as to the effect of the order on the sureties in the
undertaking who have no notice of the proceeding. This
disposes of all the material questions in the case.

*By the Court.*— The judgment of the circuit court is
affirmed.