# CHARLESTON.

STATE *ex rel.* KLOAK BROS. & Co. *v.* CORVIN *et als.*

Submitted January 20, 1902.   Decided March 8, 1902.

1. INJUNCTION BOND—*Counsel Fees.*
   Reasonable counsel fees may be included in estimating the damages in an action on an injunction bond, when the injunction has been improperly or wrongfully sued out, and the counsel fees were paid, or agreed to be paid, for procuring the dissolution of the injunction.  (p. 22).

2. INJUNCTION—*Personal Property—Promissory Notes.*
   A bill to enjoin a sale of personal property under a deed of trust, securing the payment of non-negotiable promissory notes, given for the purchase money of the property, alleging also that the plaintiff therein had refused to accept the property under the contract and had caused the same to be sold under attachment proceedings and purchased it, is essentially and primarily a bill for injunction, although it prays a rescission of the contract of sale and the injunction having been dissolved, counsel fees are allowable as part of the damages in an action on the bond.  (pp. 22, 23).

3. DAMAGES ON BOND—*What Included.*
   In such case, money actually and necessarily paid out for traveling expenses and other legitimate purposes, in procuring the dissolution of the injunction, should be included in the damages, but nothing should be allowed as compensation for loss of time nor for the detention of the property.  (p. 24).

4. ISSUES ON PLEAS—*No Judgment Until Trial.*
   When in a joint action upon a joint, or joint and several, demand, there has been service of process on all the defendants, in a case in which an order for an inquiry of damages is required, and the plaintiff has filed with his declaration the affidavit provided for in section 46 of chapter 125 of the Code, and one of the defendants has not appeared, but the others have appeared and filed pleas accompanied by counter affidavits as provided in said section, there can be no final judgment against the defendant in default until after the determination of the issues on the pleas. The judgment by default is depend-

ent on the result of the trial of the issues joined, and the final judgment must be joint. (pp. 25, 26).

5. Plea Non-Damnificatus—*When Proper.*

The plea *non damnificatus* is only proper when the condition of the bond declared on is to indemnify and save harmless. In an action on an injunction bond it cannot be filed, for the condition of the bond is to pay costs and damages, affirmative acts. (p. 26).

6. Injunction—*Res Adjudicata.*

In such action, a plea "that if the plaintiff was damaged and injured in any wise by reason of any matter or thing in the said declaration complained of it was by reason of its own wrong and default" is bad; for that the injunction was wrongfully or improperly sued out is then *res judicata.* (p. 28).

Error to Circuit Court, Mercer County.

Action by the State for the use of William Kloak against J. L. Corvin. Judgment for defendant, and plaintiff brings error.

*Reversed.*

W. W. McClaugherty, for appellants.

Harold A. Ritz, for appellee.

Poffenbarger, Judge:

This is a writ of error to a judgment of the circuit court of Mercer County in an action of debt on an injunction bond in which the State of West Virginia sues at the relation and for the benefit of Wm. Kloak, Aug. Kloak and Louis Schneider, partners doing business as Kloak Bros. & Co., the defendants being J. L. Corvin and Mary P. Atkinson, principal and sureties, respectively, in the injunction bond. The court instructed the jury upon the trial that the evidence in the case was insufficient to support a verdict for the plaintiff and that they should find for the defendant and the jury found accordingly.

It is necessary to a proper understanding of the positions taken by opposing counsel in the case that a short statement be given, showing the nature of the chancery suit in which the injunction was sued out and the bond in question given. On the 14th day of October, 1897, Corvin contracted to purchase from Kloak Bros. & Co. a lot of saloon and bar fixtures at the price of six hundred dollars of which one hundred and fifty dollars was to be paid in cash and the balance in monthly install-

ments of thirty-seven dollars and fifty cents each, the notes to bear interest and to be secured by first lien upon the property and the goods were to be shipped on or about October 16, 1897. The one hundred and fifty dollars was paid on the 14th and 15th days of October, 1897, and on the 30th day of October, 1897, a deed of trust was executed by Corvin conveying the property to Frank M. Darst, trustee, to secure the payment of the notes given for the balance of the purchase money. Under this deed of trust the trustee advertised the property for sale on the 12th day of March, 1898, and on the 9th day of March, 1898, an injunction was awarded Corvin restraining the trustee from making the sale. The grounds for the injunction set forth in the plaintiff's bill were that the goods were not shipped until about the 1st of November, 1897, and that they were not of such material and workmanship as were provided in the contract. It was further alleged that when the fixtures arrived Corvin promptly declined to receive them and to make any further payments and notified Kloak Bros. & Co. of their declination to accept them and to pay the balance of the purchase-money, and also that Corvin had then attached said property and caused it to be sold to satisfy his claim and judgment for three hundred dollars damages at which sale Corvin became the purchaser. Such proceedings were had in said chancery suit that the injunction was dissolved and the bill dismissed for want of equity on the 13th day of May, 1898, and this suit was brought on the 26th day of June, 1899. In the declaration the amount demanded is itemized as follows: Forty-eight dollars and sixty cents costs in the chancery suit, one hundred dollars attorney's fees necessarily incurred, thirty dollars laid out and expended as traveling expenses, ten dollars for loss of time by reason of the injunction and sixty dollars damages sustained by reason of having been kept out of possession of the property from March 12, 1898 until June 20, 1898. On the first trial which was had on the 16th day of February, 1900, the jury found for the plaintiff in the sum of one hundred and thirty-eight dollars and ten cents, but the court being of opinion that the verdict was for a greater sum than was warranted by the evidence required the plaintiffs to release twenty dollars on pain of setting aside the verdict and, the plaintiffs refusing, the verdict was set aside. On the 15th day of May, 1900, another trial was had and the court, at the instance of the defendant and over the objec-

tion of the plaintiffs, gave the following instruction: "The court instructs the jury that the evidence in this case is insufficient upon which to found a verdict for the plaintiffs and they shall find for the defendant, J. L. Corvin." And, in pursuance of that instruction, the jury so found and the plaintiffs, having taken several exceptions, moved the court to set aside the verdict and grant a new trial which motion was overruled and judgment for the defendant given.

Much of the argument relates to the question, whether counsel fees may be recovered in the action on the theory that they constitute an element of damages. As has been seen, the largest item sought to be recovered is one hundred dollars which is alleged to have been necessarily expended in the employment of counsel procuring the dissolution of the injunction. In resistance of this claim it is contended that the injunction was only ancillary or auxillary in its nature, the primary object of the suit having been something other than the mere prevention of sale under the deed of trust. This defense is based upon the doctrine in High on Injunctions, s. 1686 that "The true test with regard to allowance of counsel fees as damages would seem to be, that if they are necessarily incurred in procuring the dissolution of the injunction, when that is the sole relief sought by the action, they may be recovered; but if the injunction is only ancillary to the principal object of the action and the liability for counsel fees is incurred in defending the action generally, the dissolution of the injunction being only incidental to that result, then such fees cannot be recovered." When this distinction should be applied is a matter of some difficulty, but it is certainly not clearly applicable here. The cases cited by the author are all very different in their nature from this one. Where the principal purpose of the suit was to adjudicate a question of title and an interlocutory injunction was obtained but no motion was ever made or argued for its dissolution, where the principal contest at the hearing was not with reference to the injunction but concerning a question of title, where no motion was made to dissolve and the fees proven were for the preparation and management of the case upon the final hearing and where it did not appear that the injunction rendered the trial of the case more difficult than it otherwise would have been, courts have refused to allow counsel fees to be considered as elements of damages. High on Injunctions, s. 1686. While

the prayer of the bill in the cause in which the injunction bond in question here was given was that the deed of trust be set aside and held for naught, that the contract be rescinded and that the sale be inhibited and enjoined, it is manifest that the prevention of the sale of the property was the principal if not the sole purpose and object of the suit. It is impossible to conceive of a case in which a sale may be enjoined without a showing of some reason or ground for so doing. The allegations of this bill amount to nothing more than a statement of facts constituting grounds for the enjoining of the sale. They show that the trust deed creditor, by failure to comply with the contract, had enabled the plaintiff in the bill to rescind the contract of sale, that he had done so, that he had then caused the property to be sold under an attachment and that at the sale he had purchased the property. That property was personal property and the plaintiff in the injunction was in possession of it. Prevention of the sale upon the ground set forth in the bill would virtually have ended all controversy between the parties. The notes given for part of the purchase-money were not negotiable and in any action upon them whether in the hands of Kloak Bros. & Co. or their assignees full defense could have been made and there was no ground for equity jurisdiction in respect to them. According to the contention of the plaintiff in the injunction bill the contract had already been rescinded. Hence, it is manifest that the bill was essentially and primarily one for injunction and in an action upon the injunction bond given in such case, the injunction having been dissolved, the authorities are practically unanimous in holding that reasonable counsel fees may be recovered as part of the damages. "A reasonable amount of compensation paid as counsel fees in procuring the dissolution of an injunction may be recovered in an action upon the bond, or in the assessment of damages in the injunction suit after dissolution where that practice prevails, if the injunction was improperly or wrongfully sued out, the amount being limited to fees paid counsel for procuring the dissolution, and not for defending the entire case. Counsel fees in such cases are regarded as a proper subject of consideration in estimating the damages incurred, the loss being as direct and immediate as any other." High on Injunctions, s. 1865, citing numerous cases. The authorities, except the decisions of the United States courts, are practically unanimous. The only

case decided by this Court involving that question is *State ex rel. Levy* v. *Medford,* 34 W. Va. 633, in which JUDGE HOLT delivered the opinion of the Court and in which it is held that "A reasonable amount paid as compensation to counsel as an item of the expense necessarily incurred in procuring the dissolution of an injunction wrongfully obtained may be recovered in a suit for damages upon an injunction-bond." The authorities also generally agree that the defendant in an injunction suit can recover the fees of his attorney for his services in obtaining a dissolution of the injunction before he has paid them. It is enough that the liability to pay is fixed and absolute. 10 Am. & Eng. Ency. Law.

As to the other items demanded in the declaration it will be noticed that one is for the cost of the chancery suit. If these costs have not been paid by the defendant Corvin such part of them as were made in procuring the dissolution of the injunction may undoubtedly be recovered for it is a part of the condition of the bond that he shall pay the costs and his failure to pay is a direct breach of the obligation. Whatever money was necessarily expended by the plaintiffs in procuring the dissolution of the injunction are direct damages resulting from the suing out of the injunction. Hence, the money laid out and expended as traveling expenses in making defense to the injunction should be included in the damages. But the ten dollars for loss of time and the item of sixty dollars for having been kept out of possession of the property are too remote and indefinite in their nature to be included in the damages. "In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. And where no damages have actually been incurred, none should be assessed. In other words, the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence." High on Injunctions, s. 1663. To the same effect see 10 Am. & Eng. Ency.

Law. 995.  The evidence offered in relation to these two items only tends to show that Louis Schneider, one of the co-partners, attended to the sales and collections of the firm, that his time was worth to the firm ten dollars per day and that two days of his time had been taken; and that, by reason of the injunction, the possession of the property had been withheld from them for a considerable time and that the rental value of such property was so much per month.  It does not appear that by reason of the time of Louis Schneider devoted to the injunction suit the firm lost or paid out to any person any money and was in that way damaged, even if that would be sufficient were it shown.  Litigants are compelled to give some of their time and attention to matters pending in the courts affecting their rights as well as to other business and such damages are certainly rather remote.  The proceeding enjoined was not for the possession of the property but for the sale thereof, treating it as the property of Corvin, the plaintiffs' demand against Corvin being for money.  While the sale was delayed by the injunction, interest accrued on the debt in favor of Kloak Bros. & Co., which must be regarded as sufficient compensation for that delay.  The court having excluded evidence relating to the claim for counsel fees and the money expended for traveling expenses, and the plaintiffs having excepted to this action in so doing, the court thereby erred as well as instructing the jury to find for the defendant.

It is also assigned as error that the court, upon a counter affidavit filed by Corvin, denying that he was indebted to the plaintiffs in any sum and showing that his co-defendant, Mary P. Atkinson, was his surety and only liable as such, set aside the office judgment as to Corvin and allowed him to file his pleas. An affidavit had been filed with the declaration, as provided in section 46 of chapter 125 of the Code, and the plaintiffs in error insist that they were entitled to take a judgment against Mary P. Atkinson because she did not appear nor file any affidavit, and that the court erred in refusing to permit them to do so. This position is not tenable.  It is a joint action and both parties were served with process.  One appeared and the other did not.  In such case, separate judgments cannot be taken against the defendants.  While the office judgment could not be set aside as to Mary P. Atkinson without a plea, accompanied by affidavit, there could be no final judgment against her until

such judgment could be rendered against her co-defendant. Upon filing his affidavit with his pleas, the court was bound to set aside the office judgment as to him. Hence, there could be no judgment against him until after the determination of the issue between him and the plaintiffs. Until that time, the default as to his co-defendant, Mary P. Atkinson, must stand, admitting the right of action of the plaintiffs against her and her liability to them on the bond,` but leaving the amount of the recovery to be ascertained by the finding of the court or the verdict of a jury. While it is said in section 46 of chapter 125 of the Code that if the defendant fail to file his plea and affidavit as therein required, judgment shall be entered for the plaintiff by the court for the sum stated in his affidavit, with interest thereon from the date of the affidavit till paid, such judgment can only be entered in those cases in which no inquiry of damages is necessary. Another portion of said section provides that "If the case be one arising out of contract in which there is an order for inquiry of damages, and the plaintiff has filed with his declaration the affidavit hereinbefore mentioned, no plea shall be filed in the case either at rules or in court, unless the defendant shall file therewith the affidavit hereinbefore required to set aside an office judgment in which no order for an inquiry of damages had been made. When a jury is impaneled to execute an order for an inquiry of damages, their oath shall be that they will well and truly find the amount, if any, which the plaintiff is entitled to recover in the action, and a true verdict render according to the evidence. And the affidavit of the plaintiff hereinbefore mentioned shall be legal evidence on such inquiry." Section 45 of chapter 125 of the Code provides that "There need be no such inquiry in an action for debt upon any bond or other writing for the payment of money, or against the drawer or endorser of a bill of exchange or negotiable note or in an action of debt or *scire facias* upon the judgment or recognizance." The last clause of section 44 of said chapter provides that in an action at law, when the defendant continues in default, "Judgment shall be entered against him, with an order for the damages to be inquired into, when such inquiry is proper." To determine when such inquiry is proper, reference must be had to the common law as modified by section 45 of said chapter 125, which has been quoted. The bond sued on here is a bond with condition other than for the mere payment of

money.   Its condition is that the principal therein shall well
and truly pay all such costs as may be awarded against him
and all such damages as shall be incurred by any party to the
suit in case the injunction shall be dissolved.   In such case, an
inquiry of damages is necessary and there can be no final judg-
ment without it.   "An inquiry of damages is, in general, requi-
site in all cases where the amount of the demand, and the de-
fendant's liability to pay it, are not ascertained (at least *prima
facie*) by his own written acknowledgment, or something equiv-
alent thereto."   4 Minor Inst. (602), 648; *Hickman* v. *Rail-
road Co.*, 30 W. Va. 296.   From this it follows that the court is
not bound to give the plaintiffs judgment for the amount named
in the affidavit.   The effect of the affidavit is to prevent the
filing of a plea to the action without an accompanying affidavit,
denying that any sum is due upon the demands stated in the
declaration, or admitting that an amount less than is claimed
by plaintiff is due upon said demands, and it has the further
force and virtue of being evidence for the consideration of the
court or jury in the execution of the order of inquiry.   It pre-
cludes a defendant who fails to file such counter affidavit from
contesting the plaintiffs' right of action against him but it does
not relieve the plaintiff from the duty of proving the amount of
his damages, although it does permit him to use the affidavit
for that purpose.   Hence, it is clear that in this case the plain-
tiffs were not entitled to a final judgment against Mary P. At-
kinson, if, by reason of such affidavit, a separate judgment can
be taken in any case against a joint defendant when all the de-
fendants have been served with process.   That is a question
which it is unnecessary to decide now, but it may well be doubted
whether in those cases in which an inquiry of damages is not re-
quired and in which the statute says the court shall render judg-
ment for the amount named in the affidavit, the common law
rule, that separate judgments cannot be rendered against joint
defendants when all have been served with process, is effected
by said statute.   No rule of law is better settled than that such
judgments cannot be taken.   "In a joint action upon a joint, or
joint and several, instrument, it is a long and well established
rule that there must be a joint judgment, and it is error to
render separate judgments, but it is not a universal rule."   *Sny-
der* v. *Snyder*, 9 W. Va. 415; *Carlon's Adm'r.* v. *Ruffner*, 12 W.
Va. 297; *Cowen* v. *Guthrie*, 15 W. Va. 100; *Hoffman* v. *Bircher*,

22 W. Va. 537; *Midkiff* v. *Lusher,* 27 W. Va. 439.   Most, if not
all, of the exceptions to the rule are noted in *Snyder* v. *Snyder,*
and need not be repeated here.   That, in such case, when there
is a judgmnt by default against one defendant, no final judg-
ment as to him can be entered until the issues as to the other
joint defendants are disposed of, and that such judgment by
default is dependent upon the finding of those issues, is also
well settled.   *Carlon's Adm'r* v. *Ruffner,* 12 W. Va. 297, (syl.
point 11), page 309; *Enos, Hill & Co.* v. *Stansbury,* 18 W. Va.
477.   Therefore, the court did not err in permitting the office
judgment to be set aside as to Corvin and withholding final
judgment as to his co-defendant pending the determination of
the issues on his pleas.

   Consideration of this case has proceeded thus far upon the
supposition that the pleas tendered by the defendant, Corvin,
are sufficient.   The first one is *non damnificatus,* and the other
is that if the plaintiffs have suffered any damages by reason of
the matters set forth in the declaration, such damages were oc-
casioned by their own wrong.   To the filing of these pleas the
plaintiffs objected, but the court permitted them to be filed, this
ruling was excepted to, plaintiffs moved to strike the pleas from
the record, the motion was overruled and the plaintiffs excepted
to this action of the court.   Neither of the pleas should have
been permitted to be filed.   Neither of them is any answer to
the breach assigned in the declaration.   *Non damnificatus* is a
good plea only when the specialty sued on is one conditioned to
indemnify and save harmless.   It is inadmissible where the
condition of the bond is, for the performance of some affirma-
tive act.   *State* v. *Hayes,* 30 W. Va. 107; *Poling* v. *Maddox,*
41 W. Va. 779.   "It appears that the plea *non damnificatus* is
proper where the bond is merely to indemnify and save harm-
less:  for it then answers the whole condition in its terms.   But
where the bond is conditioned for something besides indemnify-
ing and saving harmless, a plea of *non damnificatus* which does
not answer the breach of the condition will be bad on general
demurrer.   Thus where plaintiffs and H. having become bound
with defendant and R. as sureties in a bond for W. for 300
pounds, a bond was with condition to be void if defendant and
R. should pay to W. said sum, and *thereby* acquit, release and
discharge said plaintiffs and H. from etc.,—it was considered
that the plea of *non damnificatus* was no answer to that part of

the condition by which defendant undertook to pay the sum for which plaintiffs bound themselves, and it was therefore bad." 5 Rob. Pr. 661; *Holmes* v. *Rhodes,* 1 Bos. & Pul. 638. Where the condition of the bond was to remain a faithful prisoner and not depart the limits of the jail, *non damnificatus* was held to be not a good plea for the reason that it was no answer to the breach of the bond. The defendant is not permitted to say, after the breach of the condition of the bond, that the plaintiff is not injured thereby except in those cases in which the bond is conditioned only to indemnify. *Woods* v. *Rowan,* 5 Johns. 42. "Whether this plea be good or not will depend upon what is to be deemed the true construction of this bond. If the defendant is to be considered as undertaking to pay off and discharge the recited bond, the plea is bad; but if it be considered a bond of indemnity, and to save the plaintiff harmless from all damages, by reason of the recited bond, the plea is good." *Douglass* v. *Clark,* 14 John. (N. Y.) 177. The condition of this bond is that the defendant, Corvin, shall do a positive and affirmative act or acts in case the injunction is dissolved. *First,* he is to pay all such cost as may be awarded against him. *Second,* he is to pay all such damages as shall be incurred by any party to the suit. It is not that he shall save harmless the plaintiffs and indemnify them but that he shall pay to them the cost and the damages sustained by them. The declaration alleges that the injunction was dissolved, that the court decreed against Corvin certain cost which he has not paid, and that the plaintiffs have sustained damages in certain specified amounts by reason of the suing out of the injunction. It is clearly no answer to these allegations to say that these breaches of the condition of the bond have not damnified the plaintiffs. It is impossible also to see how, logically, it can be said in answer to the declaration that if the plaintiffs have been damaged, the damages are the result of their own wrong. The decree of the court dissolving the injunction and dismissing the bill shows that the plaintiffs were not in the wrong but that the defendant was. That is *res judicata* and cannot be opened up by a plea in this case.

For the errors aforesaid the judgment must be reversed, the verdict set aside, said pleas stricken out, and the case remanded with leave to the defendants, or either of them, to plead and for further proceedings according to law.

*Reversed.*