# CHARLESTON.

HUMPHREY MANUFACTURING CO. v. CITY OF ELKINS *et al.*

Submitted January 16, 1923.    Decided January 30, 1923.

1. EMINENT DOMAIN—*Not Enjoined from Constructing Paved Street on Ground Taking Property Without Compensation, Where Not Shown by Clear Preponderance to Encroach on Plaintiff's Land.*

    Where suit is instituted for the sole purpose of enjoining municipal or county authorities from constructing a paved street or road over lands belonging to plaintiff, thus taking plaintiff's land for public use without just compensation, and plaintiff fails to prove by a clear preponderance of the evidence that such street or road takes, or encroaches upon his land, the injunction should be dissolved and the bill dismissed. (p. 24).

2. INJUNCTION—*No Attorney's fees Except Statutory Not Recoverable as Part of Costs or Damages by Prevailing Party, in Decree Dissolving Injunction, Reasonable Attorney's Fees Recoverable in Action on Injunction Bond After Dissolution and Dismissal.*

In the decree dissolving an injunction and dismissing the bill, attorney's fees (except the statutory fee) cannot be recovered as a part of the costs or as damages to the party prevailing. Reasonable attorneys' fees in such cases are recoverable in a suit on the injunction bond. (p. 26).

(McGINNIS, JUDGE, absent.

Appeal from Circuit Court, Randolph County.

Suit by the Humphrey Manufacturing Company against the City of Elkins and other to enjoin defendants from building and permanently improving an avenue within defendant city. From a decree dissolving the bill, plaintiff appeals.

*Modified and affirmed.*

*W. B. & E. L. Maxwell,* for appellant.
*Spears & Irons,* for appellees.

LIVELY, JUDGE:

The purpose of plaintiff's bill is to enjoin the county court and the municipal authorities of the city of Elkins from building and permanently improving what is known as Livingstone Avenue in the city of Elkins. The bill charges that the defendants, without notice to the plaintiff, are proceeding to take its land for public use without having paid just compensation therefor or without having secured such compensation to be paid, and without its consent and permission; and intend to use the same for public road purposes. The bill charges that plaintiff is the owner of a parcel of land in said city acquired by it from W. G. Wilson, by deed dated the 30th. day of June, 1905, and which is correctly described as bounded on the north by land of Andrew Taylor, on the east by the county road, on the south by property lately purchased by the Kendig & Hall Cooperage and Manufacturing Company and on the west by W. Va. C. & P.

Ry. Co., now the Western Maryland railway, on which lot plaintiff has established and is operating a large and commodious foundry and machine shop; that a controversy exists between the plaintiff and defendants as to the true location of the county road described as the eastern boundary of plaintiff's lot; and that defendants are beginning work improving the road by constructing a hard surface concrete pavement thereon, claiming to be working on the road as it was originally located; but that in truth and fact they are not making the improvement upon said road as originally located, but have departed therefrom and are constructing the road upon and over the land of the plaintiff. An injunction was awarded; defendants answered to the effect that they were constructing and improving the avenue upon the location of a county road which had been established at that point through the lands of Andrew Taylor who owned the tract through which the road was located and opened in the year 1893; that the land of the plaintiff was not being taken and that its title to the Wilson lot covered no part of the land where the road was being built.

It will be seen that the main controversy is over the proper location of the county road which is now being improved as Livingstone Avenue. Surveys and maps were made by engineers of the lines and distances of abutting property on the road in controversy, and in the near vicinity of plaintiff's lot, and the road was attempted to be surveyed and located by the original calls and by its actual location when established; and numerous depositions were taken in an attempt to locate the road as originally established. The lower court, after full hearing, dissolved the injunction and dismissed plaintiff's bill, and in the decree awarded $100 as and for attorney fees for the defendants and against the plaintiff. From this decree this appeal is prosecuted; and it is claimed that the lower court erred in dissolving the injunction and dismissing the bill without establishing the true location of the road in controversy; and that it was error to allow to the defendant an attorney's fee of $100 to be taxed as a part of the costs of the suit.

The tract of land through which the road was established in 1893 was owned by Andrew Taylor, and plaintiff deraigned its title from Taylor who in 1892 conveyed to Gabbert by metes and bounds a 2½ acre tract bordering on the right of way of the railroad, in which he granted Gabbert a right of way from the lot conveyed to the public road; but at that time no public road had been established. Whether the grant of this right of way from the Gabbert land was to the road which was then contemplated, does not appear. As above stated, in the following year (1893) the road in question was established by specific calls and distances through the Taylor land, and on the east side of the Gabbert tract, which was between the railway and the county road as then established. The Gabbert tract was divided into three or more parcels, the basic lines of which rest on the railway right of way. One of these parcels, one acre, was sold from a purchaser thereof by decree of court in the year 1904, and purchased by W. G. Wilson, and a deed made to him by Commissioner Scott. It is clear that this deed conveyed nothing outside the boundaries of the original Gabbert deed, and the side lines of the Wilson lot as conveyed extended from the railroad eastwardly a distance of 6½ poles or 108 1/3 feet, which falls short by several feet of reaching the line of Livingstone Avenue, as now being constructed, and also several feet short of reaching the road as shown by the travel thereon. However, when Wilson deeded this acre tract to plaintiff in 1905 he did not confine his deed to the Gabbert lines, nor did he convey by lines and distances, but by boundary, describing it as bounded on the east by the county road, on the west by the railroad, and on the north and south by adjoining properties. It is thus contended by plaintiff that its title is not confined to the Gabbert boundaries but that its right under the Wilson deed extends from the railroad to the county road, or that the side lines of its lot running from the railroad to the location of the county road should be 115¾ feet on the northern line and 126 6/10 feet on the southern line. Plaintiff contends that having taken possession of the lot at the time of its purchase and immediately

thereafter having constructed its foundry and machine shop thereon its title extends beyond the Gabbert boundaries (although the lot was not enclosed by fence), and that its possession and title extended to the county road. Under this contention this question immediately arises: "What is the true location of the county road?" Realizing the importance of the true location of the county road in order to maintain its suit for injunction, the plaintiff has attempted by its surveys and evidence to establish the true location in front of its lot as 126 6/10 feet from the southern corner and 115¾ feet from the northern corner. We do not think the evidence has clearly established the location of the road in front of plaintiff's property at the points contended for by it; indeed, we think the evidence does not convincingly establish the location of this road through the Taylor land at any particular place near plaintiff's lot except at the northwestern corner of the original Gabbert survey now known as the Gulland-Clarke lots, and possibly a distance of about 16 feet along the eastern portion of the Gabbert survey now known as the Adams Planing Mill lot, which lies a short distance and in a northeasterly direction from plaintiff's lot.

Omitting the calls from the Tygarts Valley river to the Taylor land, the report of the viewers shows the location of the road through the Taylor land as follows: "S. 76° E. 10 poles, N. 87½° E. 3 poles, N. 33° E. 24½ poles, N. 45° E. 98 poles." The 98-pole line is the one in controversy in this suit. The evidence shows that the original survey for the road began at Tygart's Valley River near where there is now a concrete bridge. The road from the river up to the S. 76° E. 10 poles line was not run by the surveyors, there having been many changes made in that part of the road since it was first surveyed and laid out. This line began at the Scott-Taylor line, where Surveyor Parsons took the center of the traveled roadway and ran the original calls with 1° 24′ variation, which he says is the proper variation from the date of the original calls. He did not hit the traveled road; the end of the 87½° E. 3 poles line was on the eastern side of the traveled way in the field east of some apple trees; the

33° E. line was in a field near the road; he used an old-fashioned link chain; he had formerly run the county road down to about opposite the Humphrey Manufacturing Company shop, and in ascertaining the bearing of N. 45° W. it struck through a window of a house at that time, but the house has since been moved back; he had formerly located the road for the Leadsville Good Roads Advisory Committee, and at that time recommended the adoption of the traveled road, because he thought there was going to be a ''rumpus kicked up''; he measured it as *carelessly* as he thought it might have been measured when it was first laid out; the principal discrepancy between the old-fashined way of surveying and the new has to do with distance; at the beginning of the last line, (N. 45° E. 98 poles, the one in question) he was over in Taylor's field, so that when he arrived at plaintiff's lot was out close to the field, or near to the stump of the double tree; he thinks there is no question that the road was changed between the river and the Scott-Taylor line, and also in front of the Humphrey Manufacturing Company. He says the road as traveled is not on the location of the calls in the original order adopting the road; that every indication is that when the road was made there was not much attention paid to the stakes, all of which were probably not there when it was built. He checked the lines of the Elkins Manufacturing & Improvement Company land on the other side of the road from the Humphrey plant, and they checked ''pretty well'' with the old calls in the deeds, and also the distances, but that he checked up to an iron pin near the old road ''as Taylor understood it''; he does not know how the iron pin came to be there. Both the surveyor for the plaintiff, Parsons, and the city engineer, Kress, agree on a point located on the eastern corner of the Gulland-Clarke lots (which is 100 feet from the railroad to the county road, or Livingstone Avenue), as the true location of the northern end of the road as originally built; but Kress says that the original calls will not put it where it is built at that point. There seems to be no dispute about the western line of the road at the Gulland-Clarke property, but the other side of the road at that point has not

been definitely located, there being uncertainty about the line of the Willhide property on the opposite side from the Gulland-Clarke. The railroad right of way adjoining the Gulland-Clarke is the only permanent point which could be used as a landmark by the surveyors.

The witness Scott, who did the original grading of the road, says it is his recollection that the new road when laid out took the place of the right of way which Taylor was to furnish Gabbert to the county road, and that when it was laid out it touched the brick yard lot for a distance of about 16 feet near where the planing mill company's office is at present, that the road was built so as to connect with the brick yard lot (a part of the Gabbert lot), but that the traveled road now is east of that location; the road first built topped the hill at the Taylor-Scott line about where it is now; that the road in being built was changed by agreement of the adjoining land owners, in at least three different places, one over the top of the hill between Scott and Taylor, another, he thinks, opposite the planing mill and the plaintiff's lot, and still another near the apple and plum trees in Taylor's field, which is near the end of the ten-pole line; that these changes were made from the original survey of location, with the consent of the road commissioner; that the road was located (or built) touching the Gabbert lot 16 feet, which was for the purpose of meeting Taylor's obligation to Gabbert to give him a right of way to the public road as shown by the deed to him dated one year before the road was located.

Engineer Kress says that the calls of the viewers do not check with any survey of the adjoining lots as now recorded; that if the calls of measurement from Tygarts Valley River bridge, or the concrete bridge, at Scott's Ford, were followed exactly they would throw the road opposite plaintiff's property about 90 feet east of the Gabbert lot, or about 60 feet east of the present road, which would be in the Taylor field, now owned by Elkins Manufacturing & Improvement Co., that if the original calls were followed it would not connect the road with any of the determined points, especially the Gulland-Clarke point indicated in the calls in the deed to

Gulland-Clarke; that if those calls were followed it would not be possible to connect the line between the Gulland-Clarke and the Willhide property; that in "getting up" a map of the city of Elkins he checked up and found that the corner of the Gulland-Clarke property was correct; that in using the line from the corner of 16th street between Taylor and Scott, it shows that the center line of Livingstone Avenue, or the roadway being now improved, will fall very closely to the original viewers' survey, not running from the Gulland-Clarke end, but disregarding the first calls of the road from the Tygarts Valley River and using a point on the line between Taylor and Scott. That this point is on a steep bank or hill where the road makes a side cut, indicating its existence there for a long time, and thence following the original calls of the viewers and disregarding to some extent the declinations, the line will tie with the established corner at the Gulland-Clarke lots. In short, Kress took the arbitrary point of the Taylor-Scott line where the ancient cut indicated the original road (which, it seems that Parsons also took), and made such recognition in the calls and distances as would bring the road from this arbitrary point on the Taylor-Scott line, to a point between the Gulland-Clarke and Willhide lots. He says it would be impossible to follow the calls of any property line from the Gulland-Clarke toward the Humphrey Manufacturing Company's property, and correctly fix the original location of the road; that there are "projections" on both sides of the road; that the only way to locate the road with reasonable accuracy, in accordance with the viewers' calls, is to reconcile, as far as possible, the calls and distances and run the road from the arbitrary point at the Gulland-Clarke to the arbitrary point on the deep cut at the Taylor-Scott.

The old road was not built on the location made by the viewers, if the road was intended to be made by their calls, only in a general way. Witness Scott's recollection is that the changes were made with the consent of the road commissioner, and the abutting owners, and there is no evidence to contradict this. Parsons, in a measure, confirms this view.

The evidence strongly tends to show that the contemplated improvement of the avenue is fairly within the original location of the road, and that no part of plaintiff's property is being taken. The old road as traveled, which lies in front of plaintiff's lot, is west of the proposed improvement at that point. The new location will take the travel farther east of plaintiff's property than it was before the improvement. Whether Wilson intended to make the traveled road the eastern boundary of the lot conveyed by him to the plaintiff, or whether he intended to make the original location of the road by the viewers the boundary, is quite uncertain. It will be noted that he described the lot as containing one acre and being the same land conveyed to him by C. H. Scott, special commissioner in the chancery cause of Edith Stalnaker and others against Elkins Brick and Tile Company, by deed dated the 26th day of May, 1904, and recorded, etc. The deed to which he refers describes the lot as lying between the county road and the railroad and between the Andrew Taylor lot and the Elkins Brick Company's lot, containing one acre, and being a part of the land conveyed by Andrew Taylor and wife to J. H. Gabbert.

We have given the substance of the evidence of the surveyors, somewhat extended, with a view of showing the uncertainty of the location of the road either by the original calls, or by the manner and places where actually constructed. It seems that not much attention was paid to the location of the road in accordance with the calls. Taylor and the other abutting land owners caused changes to be made when the road was laid out and constructed, with the consent of the road authorities; but taking the arbitrary point at the deep cut near the Taylor-Scott line where the road was originally built and a deep cut formed for that purpose and from which there appears to have been no change, and taking the arbitrary point at the Gulland-Clarke corner, which appears to be agreed upon as correct, and running the line between these arbitrary fixed points on about the same degree as that of the line of the viewers between these points, it would seem that the present improvement lies within the

original calls. It may be true, as testified to by some of the witnesses, that between these points the actual construction of the road varied, sometimes avoiding a swamp, at other times deflected to meet the convenience of a property owner or the whim of those constructing the road. At any rate, it is clearly demonstrated that the true location of this road is in doubt. In a proceeding of this character, being an extraordinary and harsh remedy, it is incumbent upon the plaintiff to show clearly, or at least by a strong preponderance of the evidence, that the boundaries of his property are as claimed and that the defendant is clearly taking a part of his land for public use. The burden is always on the plaintiff to sustain the material allegations in his bill. This is elementary. The evidence, to say the least, is conflicting and uncertain, and under the well established rule of this court in such cases the judgment and decree of the lower court is entitled to peculiar weight and will not be disturbed unless it is clearly erroneous. *Ross* v. *McConnaughy,* 85 W. Va. 199; 1 Michie Ency. Dig. 620. It is proper to use injunctive process to prevent the taking of private property for public use in contravention of the constitution, regardless of any question of damages. In such instances injunction will lie where there has been no compliance with the requirements of law. *Lovett* v. *Gas Co.,* 65 W. Va. 739; *Wenger* v. *Fisher,* 55 W. Va. 13; Constitution, Art. 3, sec. 9. But in such cases the certainty of the title in the plaintiff must be established. If the title be dependent upon a question of fact which a jury should decide, the bill should aver the intention of the plaintiff to institute a proper action at law or that one has already been instituted, before equity will enjoin. And usually if the location of a line or the question of adverse possession depends upon conflicting testimony these are issues of fact to be determined by a jury; and in such cases equity properly invoked will preserve the subject matter of the controversy in *statu quo* until the real and controlling question is settled in the proper forum. *Pardee & Curtin Lbr. Co.* v. *Odell,* 71 W. Va. 206; *Lazell* v. *Garlow,* 44 W. Va. 466. It will be observed that the bill charges that a controversy exists between

the plaintiff and defendants as to the true location of the county road in the Wilson deed described as the eastern boundary of plaintiff's land and that the defendants are beginning work improving the road by laying a hard surfaced concrete pavement thereon and have entered upon the same and commenced work making excavations therefor, claiming to be working upon the road as originally located, but in truth and fact have commenced the work and the same is being prosecuted upon the land of the plaintiff, and for the purpose of showing the true location of the road a map is exhibited with the bill which purports to show the true location. The answer of the defendants specifically denies that the eastern line of plaintiff's lot is where plaintiff claims it to be, and avers that the improvement is being made, not on plaintiff's land but where defendant has a right to make it, upon its own right of way. As stated in the beginning, the question in dispute is the location of the road, the location of the eastern line of plaintiff's lot. We do not think the court in this injunction suit could properly decide the controversy between the parties and locate the disputed line; indeed, it would be most difficult to do so under the conflicting and unsatisfactory evidence.

Is the decree erroneous because it includes as a part of the costs recovered against plaintiff an attorney's fee of $100? The amount is below the sum from which an appeal can be taken, and cannot be considered as cause for reversal, but this court having taken jurisdiction upon other points of alleged error will review and correct all matters in controversy although merely pecuniary and less than the jurisdictional amount. *Bee* v. *Burdett*, 23 W. Va. 744; Code, chap. 135, sec. 6. It is argued by appellees that the suit being for nothing else than to obtain an injunction, the court properly allowed in its decree recovery for a reasonable attorney's fee and should do so rather than to compel a proceeding on the injunction bond. It is argued that this allowance as a part of the costs is in no sense the fee which by section 13 of chapter 138 of the code limits the sum in chancery cases to $20; that this allowance is intended as a compensation for services

of attorneys who obtained the dissolution of an injunction. A reasonable amount of compensation paid as attorneys' fees in procuring the dissolution of an injunction where the suit is solely for injunction, may be recovered in an action upon the injunction bond, or in the assessment of damages in the injunction suit after dissolution, where that practice prevails, where the injunction was wrongfully sued out, the amount being limited to fees paid counsel for procuring the dissolution. Where the injunction is ancillary to the main object of the suit, then the counsel fees recovered should not include the fees paid for a defense of the entire suit. High on Injunctions, sec. 1685; *State ex rel. Levy* v. *Medford,* 34 W. Va. 633; *State ex rel. Kloak Bros.* v. *Corvin,* 51 W. Va. 19. It may be conceded that reasonable attorney's fees in a pure injunction case are recoverable against the plaintiff who has wrongfully sued out the injunction, and are recoverable as damages in a suit on the injunction bond. But the question here presented is the authority and jurisdiction of the court to include such recovery as a part of the costs in the injunction suit and decree therefor. Costs are peculiarly and purely the creature of statute; none were allowed at common law, and this court has uniformly held that prohibition will lie to judgments for costs not authorized by some statutory enactment. *Ringer v. Morris,* 82 W. Va. 492; *Bice* v. *Electrical Co.,* 62 W. Va. 685; *Wilkinson* v. *Hoke,* 39 W. Va. 403. See also *West* v. *Ferguson,* 16 Grat. 270. There is no statute in this state which allows recovery of more than $20 to the party prevailing in a chancery suit. In some of the states by virtue of statutes, after dissolution of the injunction the damages recoverable on the bond may be ascertained by a referee and the assessment enforced by order of the court, the sureties being made parties to the proceeding. *Hill v. Thomas* 19 S. C. 230; *Parish* v. *Reeve,* 63 Wis. 315; *Fears* v. *Riley,* (Mo.) 48 S. W. 828; *Grainger* v. *Smyth,* 23 N. Y. (Sup.) 934; *Russell* v. *Rogers,* 56 Ill. 176. It may be observed that under sec. 12 of chap. 133 of the Code, where an injunction is dissolved, which was given to stay proceedings on a judgment or decree for money, certain damages

and costs are recoverable in the decree of dissolution, for which execution may issue. This is the only instance which we can find where, by statute, the court in decreeing dissolution is allowed to include damages. But the recovery of the attorney's fee in question is sought to be justified on the theory that the item is not one of damages but of costs. We have seen that costs are not allowed unless there is a statute expressly authorizing their imposition. It is stated by High on Injunctions in sec. 1685 that counsel fees may be included in the assessment of damages in the injunction suit after dissolution where that practice prevails. We have not had time to examine the cases which he cites under that section. It may be that where that practice prevails it is authorized by statute, as in South Carolina, Wisconsin, Missouri, New York and Illinois (see cases cited); but that practice does not prevail in this state, and there is no statutory authority for it. The injunction bond is designed to protect the opposite party against all damages and losses which may be inflicted upon him if the injunction be tortious and wrongfully obtained, and to this bond he must look for his damages after dissolution. He cannot recover them in the injunction suit, except in the cases designated in sec. 12 of chap. 133, Code.

The decree is modified by striking out the item of $100 therein allowed to defendants to be taxed as part of the costs of the suit; in all other respects it is affirmed.

*Modified and affirmed.*