STATE OF WEST VIRGINIA FOR USE, *Etc.*

OF HOWARD V. STOUT

*v.*

PORTER M. ROGERS, *et al.*

(No. 10066)

Submitted February 1, 1949. Decided March 15, 1949.

*Stathers & Cantrall* and *Mary Frances Brown*, for plaintiffs in error.

*Maxwell & Young* and *Thomas A. White*, for defendant in error.

Fox, Judge:

At April rules, 1943, Porter M. Rogers and Grace Blake filed their bill in the Circuit Court of Harrison County against The Empire National Bank, Howard V. Stout and others, the general purpose of which was to enforce an alleged lien on a tract of 340 acres of land in Grant District of said county; and, as incidental thereto, and to the sale of said land, an injunction was prayed for as against Howard V. Stout, inhibiting him from trespassing on said 340 acres of land, and particularly from using and operating a certain ramp which, it was alleged, obstructed the use of a railroad sidetrack located on said land. On April 12, 1943, the injunction prayed for was awarded by an order of the Judge of the Sixteenth Judicial Circuit, to be effective upon the execution of a bond in the penalty of one thousand dollars, conditioned as required therein. On April 13, 1943, the defendant herein, Porter M. Rogers and W. H. Blake, executed such bond, the condition and obligation of which were as follows:

> "The condition of the above obligation is such that whereas, on the 12th day of April, 1943, an injunction was awarded by the Honorable Frank C. Haymond, Judge of the 16th Judicial Circuit of West Virginia, in vacation, to the plaintiffs in the above styled cause enjoining and restraining the defendant Howard V. Stout, his agents, servants and employees from continuing the tres-

passes of said Stout upon the 340 acres, more or less, of land owned by the plaintiffs and fully described in their said bill of complaint and from entering upon said land, or any part thereof, and particularly, from entering upon the side tracks, known as the 'slack track' and the 'lump track', likewise fully described in said bill of complaint, and from delivering coal to or loading the same upon either of said tracks, until the further order of said Circuit Court of Harrison County, West Virginia, or the Judge thereof in vacation.

"Now, if the said Porter M. Rogers and Grace Blake shall pay all such costs as may be awarded against them, and all such damages as shall be incurred or sustained by the said defendant Stout, in case said injunction shall be dissolved, then this obligation to be void; otherwise to remain in full force and effect."

The cause was heard in the Circuit Court of Harrison County, and on March 28, 1945, a decree was entered dissolving the injunction aforesaid, and dismissing plaintiff's bill. This action of the circuit court was affirmed on appeal to this court, and the final order was entered here on February 10, 1947.

On April 5, 1947, plaintiff filed its notice of motion in the Circuit Court of Harrison County, seeking to recover of the defendants, Porter M. Rogers and W. H. Blake, named in said notice, the sum of one thousand dollars, under the obligation of the injunction bond executed by them as aforesaid. The said notice of motion was duly served on the defendants, and notice was given to the defendants therein that plaintiff would on May 5, 1947, move said court for judgment against them

"for the sum of One Thousand Dollars which is due, owing and unpaid by you and each of you to the said Stout under and by reason of that certain injunction bond in said sum, dated April 13, 1943, executed by you and each of you, payable to the State of West Virginia, and conditioned

for the payment of said Porter W. Rogers and Grace Blake of all such costs as may be awarded against them, and all such damages as shall be incurred or sustained by the said Stout in case of the dissolution of the injunction which was on that date awarded by the Judge of the Circuit Court of Marion County, West Virginia, on motion of the plaintiffs in the chancery cause of Porter M. Rogers and Grace Blake, plaintiffs, against Empire National Bank, Norman S. Elliott, administrator of the estate of Jennie Tangeman, deceased, Charles E. Potter and said Howard V. Stout, defendants, then pending in the Circuit Court of Harrison County, West Virginia, which said injunction was dissolved and the plaintiff's bill dismissed by the Circuit Court of Harrison County March 28, 1945, effective May 28, 1945, which dissolution was subsequently affirmed by the Supreme Court of Appeals of West Virginia, and a re-hearing as requested by the said plaintiffs was refused February 10, 1947, and by reason of the existence and effectiveness of the said injunction through a period of nearly four years the said Howard V. Stout incurred and sustained damages and financial losses to the extent of much more than the full amount of said bond, which said amount you and each of you, by the execution of said bond, promised and contracted to pay to the State of West Virginia for the use and benefit of the said Howard V. Stout if and when said injunction was dissolved and damages for the said amount had accrued to the said Stout."

There was filed with said notice the affidavit of Howard V. Stout, to the effect that there was due and owing to him the sum of one thousand dollars on the demand stated in said notice; but said affidavit did not expand the matter contained in the notice, in respect to stating "distinctly the several items of the plaintiff's claim."

On May 6, 1947, the defendant appeared to the said notice and demurred to, and moved to quash the same. The grounds of the demurrer assigned were: (1) That the

notice sets up a claim for damages and not to recover money by action on any contract; (2) that the notice did not show that any damages were incurred or sustained by reason of the injunction and failed to show a breach of the covenants of the bond; and (3) that the notice failed to state a cause of action against the defendants, or either of them. The grounds assigned for the motion to quash were that: (1) The affidavit filed with the notice failed to state distinctly the several items of the plaintiff's claim, as required by Code, 56-2-6; and (2) the said affidavit failed to charge that any damages were incurred or sustained by the plaintiff by the dissolution of the said injunction. It is apparent that the word "dissolution" in the above paragraph was inadvertently used, and that the word "granting" was intended.

On May 17, 1947, the demurrer and motion to quash aforesaid were overruled, following which the plaintiff, without being called upon so to do, tendered and was granted leave, over objection of the defendant, to file his bill of particulars; and on motion of the plaintiff, the defendants, over their objection, were required to file a specification of their defense.

The bill of particulars filed by the plaintiff was made up of two separate items as follows:

"(a) Attorneys' fees for which the said Howard V. Stout became obligated in procuring dissolution of the injunction of April 13, 1943—$250.00

"(b) Rentals lost by the said Howard V. Stout from L. E. Cleghorn for the privilege of loading over the coal loading ramp involved in the chancery suit of Porter Rogers vs. Empire National Bank and others 66,000 tons of coal at royalty or rental to be paid by Cleghorn to said Stout of Five Cents (5c) per ton, the said coal having been produced by Cleghorn from the Clark, Lopez and Pitcairn leases, ......$3,300.00."

On June 2, 1947, defendants filed their counter-affidavit, denying the claim of plaintiff; also their general issue plea, and special pleas Nos. 1 and 2. Of the two special pleas, one set up performance of the covenants of the bond sued on, and in the other, the payment of any damages sustained. They also filed their specification of defense, in which they make the following denials of the claim of the Plaintiff:

"They deny that Howard V. Stout became obligated for attorneys' fees in securing dissolution of the injunction set forth in the plaintiff's bill of particulars filed herein.

"They deny that said plaintiff lost rentals from L. E. Cleghorn for the privilege of loading over coal loading ramp involved in the chancery suit of Porter M. Rogers vs. The Empire National Bank and others, as set forth in said bill of particulars.

"They deny that said plaintiff was damaged in any particular by the temporary injunction awarded in said suit.

They deny that they have breached the covenants of bond upon which this proceeding is based."

The issues presented on this record may be reduced to three: (1) Whether, under Code, 56-2-6, a procedure by way of notice of motion for judgment may be employed for the recovery of unliquidated damages for the breach of the conditions of an injunction bond; (2) whether, if maintainable, the notice and affidavit filed therewith, comply with the requirements of the statute; and if not whether the bill of particulars filed in the case cured such defect; and (3) whether, in any event, the evidence in the case is sufficient to sustain the verdict, and, in particular, that part thereof based on the alleged damage sustained by reason of the restraint on the use of the ramp involved, growing out of the award of the injunction of April 12, 1943. These points will be considered in the order stated.

The use of notice of motion to recover money was probably in use in Virginia at a very early date, but it was specifically authorized by Chapter 167, of the Code of Virginia, 1849. It was there provided: "Any person entitled to recover money by action on any contract, may, on motion before any court which would have jurisdiction in the action, otherwise than under the second section of the one hundred and sixty-ninth chapter, obtain judgment for such money after sixty days' notice, which notice shall be returned to the clerk's office of such court forty days before the motion is heard * * *." The second section of Chapter 169, referred to in the quoted section, provides that: "An action may be brought in any county or corporation wherein the cause of action, or any part thereof, arose, although none of the defendants may reside therein." The same section was embodied in the Virginia Code of 1860, and in our Code of 1868, except that in our Code the exception was referred to as the second section of Chapter 123 of said Code. Our present statute on the subject will be found in Code, 56-2-6, and reads: "Any person entitled to recover money by action on any contract may, on motion before any court which would have jurisdiction in an action, obtain judgment for such money after not less than twenty days' notice, which notice shall be in writing, signed by the plaintiff or his attorney, and shall be returned to the clerk's office of such court at least five days before the return day of such notice, and when so returned shall be forthwith filed and the date of filing noted thereon, and shall be placed upon the docket for hearing. * * *"

The first question arising in the case, that being whether a notice of motion may be maintained on the demand set up herein, involves consideration not only of the notice of motion, the affidavit filed therewith, and the other pleadings in the case, but also the bill of particulars and specification of defense filed in the court below, and the testimony taken in the trial; for it is obvious that, considering the notice of motion and the affidavit filed therewith alone, we cannot determine whether the demand sued on is an action on contract or damages for its breach; nor can we consider

whether the motion is for the collection of damages, unliquidated in their nature, or upon a demand for the recovery of a specific amount. What we shall say, therefore, is based upon consideration of all the matters above referred to.

A notice of motion serves the place of summons and declaration in an action at law, and is, under our authorities, considered as an action at law. The statute authorizing the use of notice of motion for the collection of a claim arising under a contract was intended to provide a convenient and more or less summary method therefor, and was, we think, intended from the beginning to cover cases where the amount sued for was definite, and where the recovery of unliquidated damages was not involved. There are many cases which support this theory, both in Virginia and in this State. In *Wilson v. Dawson,* 96 Va. 687, 32 S. E. 461, it was held: "Damages for an injury resulting from a breach of contract, recoverable only in an action 'sounding in damages', can in no sense be considered money due upon contract, and hence a motion under Section 3211 of the Code, as it stood when this motion was made, permitting a motion to be made in any case where the person was "entitled to recover money by action on any contract", cannot be maintained to recover damages for a breach of contract, or the profits which the plaintiff would have made, if he had been permitted to fulfil his contract." In *Stuart v. Carter,* 79 W. Va. 92, 90 S. E. 537, it was held, in the body of the opinion that: "A claim for mere damages for the breach of a contract is not within the statute under which the proceeding was instituted. *Wilson v. Dawson,* 96 Va. 687. The demand must be for money due upon a contract, as contradistinguished from damages arising from the breach of a contract. The remedy extends, however, to all cases in which a person is entitled to recover money by action on contract. *Long v. Pence,* 93 Va. 584. As a bond with collateral condition is proper subject matter of an action of debt or covenant, *Supervisors of Jackson County v. Leonard,* 16 W. Va. 470, it is a contract upon which money may sometimes, but not always, be recovered,

wherefore, upon a proper showing, the remedy by motion under the statute is available. A demand for payment of money on it falls within the express terms of the statute. The mere form of the contract is immaterial. Not a word in the statute indicates purpose to limit the remedy by the form of the contract. It suffices that the money demanded is due on one."

The case of *White v. Conley,* 108 W. Va. 658, 152 S. E. 527, was a case based on the official bond of a justice of the peace, and his alleged failure to issue an execution on a judgment as required by law. It was there held that the amount for which the execution should have been issued was not the measure of damages, but that the actual loss suffered by the creditor through the alleged neglect of the justice constituted such measure, and on this theory there was no specific amount for which judgment could be entered without trial and proof, and it was held that: "Notice of motion for judgment under Code, Chapter 121, Section 6, on the official bond of a justice, is not a proper procedure where the claim asserted is one which sounds in damages, as contradistinguished from a money demand." In the body of the opinion the Court said:

"The second point of error challenges the propriety of the plaintiff's proceeding against the justice and his bondsman upon a notice of motion for judgment. It is said that this is in reality a simple action in tort for the failure of an officer to perform a legal duty, and that the action cannot be upon notice of motion for judgment because such proceedings lie only on matters arising on contract. Code, chapter 121, section 6. This is not a claim arising in tort, but, though arising in contract, it does not follow that a proceeding upon notice of motion for judgment is necessarily a proper procedure. The statute, just cited, authorizes proceedings upon notice of motion to recover money on contract. It does not authorize such procedure on a claim of damages arising from breach of contract. Upon a bond with collateral condition, or an official bond, there may

properly be a proceeding by motion for judgment for a claim which is definite, certain and fixed in amount, as for example on a claim against a justice and his bondsman for a sum of money collected by the justice under execution in favor of the claimant and not paid over to him by the justice; but if the claim sought to be collected under the bond is not definite and certain but depends upon proof as to the amount which the claimant may be entitled to recover, then a proceeding upon notice of motion for judgment is not proper. This matter was very clearly elucidated by Judge Poffenbarger in *Stuart v. Carter,* 79 W. Va. 92, 90 S.E. 537, 539 L.R.A. 1918-D, 1070. There the action was upon a contractor's bond with collateral condition. The breach relied upon was the acquisition by a lumber company of a mechanic's lien against the obligees' property for materials furnished by the lumber company to the contractor. The claim was for a sum certain under a bond which required the obligors to do definite things for the prevention of injury, and was not an undertaking of mere indemnity against injury or damage after occurrence thereof. The proceeding upon notice of motion was upheld in that case, but the court very properly observed that a bond with collateral condition 'is a contract upon which money may sometimes, but not always, be recovered, wherefore, upon a proper showing, the remedy by motion under the statute is available. A demand for payment of money on it falls within the express terms of the statute.' The contrary proposition is true: A demand for the payment of damages arising from breach of contract, as contradistinguished from money due on contract, is not within the statute and a proceeding upon notice of motion for judgment will not lie. *Long v. Pence,* 93 Va. 584, 25 S.E. 593; *Wilson v. Dawson,* 96 Va. 687, 32 S.E. 461; *Mundy v. Garland,* 112 Va. 743, 72 S.E. 713. The claim at bar cannot properly be considered a claim for a sum certain. It is a claim for damages arising out of contract —the contract being the undertaking between the justice and his bondsman on the one part and the state on the other part, that the justice would faithfully discharge the duties of his office. It is,

> therefore, evident under the principles above discussed that this claim cannot be prosecuted upon notice of motion for judgment."

In *Hensley v. Copley,* 122 W. Va. 621, 11 S. E. 2d 755, it is stated in the body of the opinion that: "As an additional objection to jurisdiction, plaintiff in error asserts that notice of motion for judgment is not the proper remedy. Code, 56-2-6, provides that any person entitled to recover money by action on any contract may do so on notice of motion for judgment. Thus from the statute itself, it appears that the remedy is confined to liability on contract and not for damages for breach of contract." It then refers to *Stuart v. Carter, supra,* and *White v. Conley, supra,* and also states: "Of course, notice of motion for judgment may not be employed to assert a claim which sounds in damages as contra-distinguished from a liquidated money demand." In *City of Beckley v. Craighead,* 125 W. Va. 484, 24 S. E. 2d 908, it was held: "A notice of motion for judgment to recover money due on contract brought under Code, 56-2-6, must allege that the amount sought to be recovered is due and payable to the plaintiff from the defendant by virtue of the terms of a contract, either express or implied, with which the defendant has failed to comply."

As against these authorities we are met with the case of *State sx rel. Bush v. Carden,* 111 W. Va. 631, 163 S. E. 54. This was a case where the owner of property was enjoined from erecting a building, and a bond was executed to cover costs and damages in the event the injunction should be dissolved. The injunction was dissolved, and there was an action brought on the bond by way of notice of motion. It was held in that case: "In an action for damages on an injunction bond, recovery thereon may be had by motion for judgment, under 56-2-5, Official Code," and, further, "When an owner of a parcel of land is enjoined from erecting a contemplated building, he may recover from the injunction bondsman for losses sustained by him which are the actual, natural and proximate result of the restraining order; and the rental value of the property of which he is

deprived by reason of the injunction may be recovered as an element of damages. And, where it appears from the evidence that an injunction defendant has sustained losses of such rentals, it is error for the trial court to sustain a motion to strike out plaintiff's evidence." This case seems to recognize the general rule that "a claim for mere damages for the breach of a contract is not within the statute under which the proceeding was instituted", citing *Wilson v. Dawson,* 96 W. Va. 687, 32 S.E. 461; and further recognized that "the demand must be for money due upon a contract, as contradistinguished from damages arising from the breach of a contract", this recognition being made by quoting, with apparent approval, what was said by Judge Poffenbarger in *Stuart v. Carter, supra.* Apparently the Court based its action in that case on the theory that the building, the construction of which was enjoined, could have been completed within a definite time, and that there was an existing rental contract from which the plaintiff in the action would have received a specific sum of money between the date of the completion of the building and the date of the dissolution of the injunction.

There may be some conflict in the rule announced in the case of *State ex rel. Bush v. Carden,* and the rule announced in the several cases referred to above; but we think the correct rule was laid down in *Stuart v. Carter, supra,* and *White v. Conley, supra,* and, in so far as any such conflict exists, the rule applied in the case of *State ex rel. Bush v. Carden* is disapproved.

We have seen that all the authorities are in accord on the proposition that damages for a breach of a contract may not be recovered in a notice of motion proceeding; but we do not think this reaches our problem. All actions at law are based on either a breach of the obligation of a contract, or upon the breach of some duty. An action at law to recover on a promissory note is based upon the theory of a breach of the promise to pay the note; and even in an action of debt, provision is made for the recovery of damages, which generally, is intended to cover in-

terest. Of course, in an action of tort, the action must be based upon the breach of some duty, which the declaration must allege and define. What we think the courts have meant to hold is that the notices of motion procedure may not be used to recover what is termed unliquidated damages, that is damages which can only be determined in the trial of a case where evidence in some form other than the terms of the contract is required to ascertain the amount of the damages sustained. Notices of motion were designed to recover liquidated demands, or demands which could be definitely ascertained from the contract sued on, on the theory that that is certain which can be made certain. If, as in the case of *White v. Conley, supra,* it has been held that action by way of notice of motion is improper where the loss actually suffered by the creditor was the measure of damages, and where this could be determined only by evidence other than the contract sued on, it is difficult to conceive it to be proper in a case where the greater part of the actual damages, by the plaintiff's own election, is based on expected rentals from property, the use of which had been enjoined, which rentals are indefinite and can only be determined by evidence outside the terms of the bond sued on.

We are of the opinion, therefore, that on the showing made by the entire record here considered, the action was not one which could be prosecuted by the use of the notice of motion procedure.

Being of the opinion that plaintiff's action is not maintainable under Code, 56-2-6, it would seem unnecessary to discuss the other points raised on the record and in argument of counsel. However, since the dismissal of plaintiff's case must necessarily be without prejudice, we think it advisable to discuss the other points raised, and fairly arising on the record, for their bearing on any future litigation which may develop.

The second point, as outlined above, bears on the form of the notice of motion and affidavit filed therewith. In

*Grass v. Big Creek Development Co.,* 75 W. Va. 719, 84 S. E. 750, it was held that: "A declaration, though indefinite and uncertain, is not demurrable, if with reasonable certainty it states one or more good and not inconsistent causes of action. A demurrer does not lie for mere indefiniteness or duplicity. Such defects are curable under §46, ch. 130, Code." Section 46, Chapter 130, Barnes' Code 1923, referred to, relates to the bill of particulars of the plaintiff's claim or defendant's specification of defense, which a court could require under that section. But notwithstanding that section, the declaration, or notice of motion must state a good cause of action. We doubt whether the notice of motion filed in this case states a good cause of action. A defendant is entitled to some notice of the character of the claim he is expected to meet, and plaintiff's notice of motion seems to fall short of meeting this requirement. The nearest it approaches this requirement is the language which alleges that "by reason of the existence and effectiveness of the said injunction through a period of nearly four years the said Howard V. Stout incurred and sustained damages and financial losses to the extent of much more than the full amount of said bond." But it utterly fails to state in what manner such damages and losses were sustained.

The affidavit filed with the notice, and which, as the statute requires, should have distinctly stated the several items of the plaintiff's claim, does not help the situation. The bill of particulars filed after the demurrer to the notice of motion and the motion to quash the same were overruled, does attempt to specify the character of plaintiff's demand; but the bill of particulars is not a part of the pleadings, and cannot take the place of the pleadings. 3 Michie's Jur., 173, and cases there cited. Therefore, the filing of the bill of particulars did not serve to cure the defect in the notice of motion and the affidavit filed therewith. We are of the opinion, therefore, that the motion to quash the notice of motion and the affidavit filed therewith should have been sustained.

Even if we assume that plaintiff's action is properly maintainable and well stated in the pleadings, we are of opinion that plaintiff has failed to sustain its claim, so far as it affects the sum of seven hundred and fifty dollars, which was necessarily required to make up the one thousand dollar jury verdict. No question appears to be raised as to the item of two hundred and fifty dollars for attorneys' fees. Assuming that the entire amount was intended to be allowed for such fees, the jury necessarily found seven hundred and fifty dollars on account of the alleged loss of rentals for the use of the ramp in question during the period the injunction was in effect.

As stated above, plaintiff elected to rely upon a certain and specific ground for recovery on account of damages for the loss of use of the ramp. No effort was made to establish any general rental value. Plaintiff's claim depends entirely on its claim that Stout could have leased the use of the ramp for the loading of coal, and relies upon a particular alleged agreement with one Cleghorn.

We think the evidence introduced by the plaintiff does not go beyond conjecture and speculation. The discussions which arose between Stout, the beneficial plaintiff, and the parties who were apparently interested in renting the ramp in question, did not take place until some eighteen months after the award of the injunction. It appears that one L. E. Cleghorn was engaged in strip coal mining from three operations in the neighborhood of the ramp, at least within some two or three miles of that location, and that he was seeking facilities for the loading of the coal he might produce from his operations. There were two loading points available: one claimed by Stout, the beneficial plaintiff, and the other by the Keeley Construction Company. There were certain advantages connected with the use of the ramp claimed by Howard V. Stout, and certain advantages attached to the Keeley ramp or tipple. The evidence is clear that it would have required the expenditure of one thousand dollars to make the ramp on Stout's property available for use; but, on the other hand, the

Keeley tipple was available for use, and had facilities for screening coal, although the access thereto was somewhat obstructed by having to pass through the surburbs of the City of Clarksburg. In the testimony of Stout, when asked whether there had been any proposal made to him in reference to the use of his ramp for loading coal, he stated that there had been; and when asked, "What was that proposal or discussion between you and those gentlemen, or either of them", testified: "They agreed to offer to pay me five cents a ton for whatever coal was loaded over the ramp." It is not shown with whom this conversation was had; but in the testimony of John E. Fay, introduced by plaintiff, when asked whether anything definite as to a contract between Stout and Cleghorn had been worked out, said that he knew that the amount of money to be paid Mr. Stout was five cents a ton, and, when asked: "State whether that tipple would have been used for the purpose of loading this coal had Mr. Stout been in position to lease it to you?", answered, "It is a pretty hard thing to determine, because we were talking over using it. But I would say that was the logical place to load the coal and we probably would have used it if we could have had access to it." He also stated that the amount of coal he loaded from the Cleghorn strip mining operations from January to August, 1945, was 66,039.57 tons. Cleghorn, when questioned as a witness, referred to the ramp claimed by Stout as the "Stout tipple", and said that he had looked at this tipple and also looked at the Keeley tipple. He failed to make any statement as to any agreement he had with Stout for use of the tipple, and finally said, "Well, I was working on a contract with Leasure McGee and he was finding a place to load. I don't know why we didn't load there." On cross-examination he stated that he made a contract with the Keeley Construction Company in January, 1945, and loaded his coal over that tipple. At no time did he indicate that there was any agreement consummated between Stout and himself for the use of the ramp covered by the injunction. The "Leasure McGee", mentioned in the Cleghorn testimony, did not testify. No subpoena had been issued for

him, and the plaintiff was not able to locate him at the time of the trial.

It is elemental that damages on injunction bonds which are remote, conjectural, or speculative can not be recovered. 43 C.J.S. 1003. "The law does not, however, permit recovery on the bond for damages which are remote, conjectural or speculative, or so uncertain as to be incapable of ascertainment." 28 Am. Jur. 518. In *Chambers v. Lighting Co.*, 81 W. Va. 714, 95 S.E. 192, not involving an injunction bond, it was held: "Although actual certainty of proof cannot lawfully be exacted, a verdict based on uncertainty and inconclusiveness cannot serve as the basis of a judgment * * *." There must be proof which furnishes reasonable certainty of damage and the amount thereof.

We are aware of the principle that on conflicting evidence the verdict of a jury will not be disturbed by this Court, unless considered to be plainly wrong; but before this rule may be invoked by plaintiff, he must have established a case meriting recovery. We do not think the plaintiff has done so in this case as to the rental element of its claim. There is nothing in the record upon which we can reasonably base an assumption that Cleghorn would have used the ramp claimed by Stout, the beneficial plaintiff, herein, the ramp was in no condition to be used without the expenditure of at least a thousand dollars; and there is no showing that there was ever any agreement or understanding between the parties for the use of the ramp, or that it would have been used had no injuction been awarded.

We do think it was incumbent upon the plaintiff to show an enforceable contract for the rental of the ramp or for the loading of coal over said ramp. A showing that Cleghorn desired, and was willing and able, to rent the ramp in its then condition would have been sufficient to justify the submission of the case to the jury on that point. Therefore, there was not, in our opinion, any error on the part of the trial court in refusing defendants' instructions Nos.

2 and 3. But it was incumbent on plaintiff to show facts and circumstances from which the jury could have reasonably inferred that but for the existence of the injunction, Cleghorn would have used the ramp and had his coal transported over it to the tipple with which it was connected. The failure to make this showing made improper the return of the verdict for the plaintiff in this action.

Objection was made to plaintiff's instruction No. 1 on the ground that the instruction refers to the rental value of the ramp during the period the injunction was in force, whereas the case was tried on a different theory. We understand from the authorities that a bill of particulars serves as a limitation on the character of the evidence which may be introduced in the trial of an action. Plaintiff, having elected to try the case on the theory of a particular rental of five cents per ton for coal which would have been produced by Cleghorn and loaded over the ramp in question, would not have been permitted to introduce evidence as to the general rental value of the ramp; and that being true, the instruction, we think, departed somewhat from the theory on which the case was tried, and should not have been given in the exact form in which it was offered. Of course, in view of our holding on the other points, this defect is not important.

Nothing in this opinion should be construed as holding that the item of two hundred and fifty dollars attorneys' fees is not recoverable under the bond sued on; nor that, in a proper action and upon proper proof, other damages may not be recovered thereunder.

We reverse the judgment of the Circuit Court of Harrison County, set aside the verdict of the jury on which said judgment was based, and remand the case to that court with directions to dismiss plaintiff's notice of motion without prejudice.

*Judgment reversed;*
*verdict set aside;*
*case remanded with direction.*