# CHARLESTON.

STATE FOR USE OF LEVY *v.* MEDFORD.

34 633
51 24

Submitted January 16, 1891.—Decided January 31, 1891.

ATTORNEY AT LAW—DAMAGES—INJUNCTION-BOND.

A reasonable amount paid as compensation to counsel as an item of the expense necessarily incurred in procuring the dissolution of an injunction wrongfully obtained may be recovered in a suit for damages upon an injunction-bond.

*I. J. McGinnis* for plaintiffs in error, cited 86 K'y 516; Code, c. 138, s. 13; Code (1860) c. 185, ss. 13, 14; Id. c. 164, s. 11; 113 Pa. St. 115; 36 Ark. 191; 5 Rich. (S. C.) L. 336.

*Campbell & Holt* for defendant in error, cited:
2 La. Ann. 620; 13 La. Ann. 14; Id. 22; Id. 440; 12 La. Ann. 181; 40 La. Ann. 23; 24 N. Y. 106; 12 Ab. Pr. Rep. 189; 11 Paige 224; 1 Duer 664; 1 Barb. Ch'y 613; 56 N. Y. 603; 3 Metc. (K'y) 34; Id. 98; 86 Ken. 516; 21 Ala. 491; 19 Ala. 344; 35 Ala. 96; 2 Blackf. 457; 44 Ind. 392; 28 Cal. 11; Id. 585; 25 Cal. 169; 1 Cal. 410; 3 Cal. 216; 21 Pac. Rep. 833; 23 Ia. 333; 12 N. W. Rep. 301; 45 N. H. 524; 25 Ill. 372; 51 Ill. 328; 78 Ill. 281; 71 Ill. 25; 77 Ill. 533; 5 Nev. 374; 6 Hun. 300; 3 Mo. App. 159; 5 Mo. App. 101; 2 High Inj. 1061; Railroad Co. *v.* Shepley 1 Mo. App.

HOLT, JUDGE:

This was an action of debt brought on the 22d day of

paid his attorney the sum of three hundred dollars; that October, 1889, in the Circuit Court of Cabell county by the State for the benefit of Joseph Levy against Thomas Medford and G. E. Thornburg on an injunction-bond. Defendants' demurrer to the declaration was overruled, and thereupon defendants pleaded "conditions performed," "conditions not broken," and "*non damnificatus.*" Issues were joined on these pleas, and by consent a jury was waived, and the matters of law and fact were submitted to the judgment of the court, and the court having heard the evidence found for plaintiff and assessed the damages at two hundred dollars. Defendants below then moved the court to set aside the finding, and grant them a new trial, but the court overruled the motion and gave judgment for plaintiff for the use of Joseph Levy. To this ruling defendants excepted, and tendered their bill of exceptions, which was signed by the judge and made part of the record, and the case is now here on writ of error allowed defendants.

The facts are as follows: In the month of February, 1887, Thomas Medford and wife brought their bill of injunction in the Circuit Court of Cabell county against Joseph Levy and wife to abate and restrain a nuisance created and kept up by Levy and wife to the serious annoyance of plaintiff by defendants' improper occupation of a certain tenement in the city of Huntington. The injunction was granted, but not to take effect until Medford gave bond with approved security, in the penalty of two hundred dollars, conditioned according to law. Accordingly Thomas Medford, with G. E. Thornburg as his surety, executed the injunction-bond, dated February 18, 1887, in the penalty of two hundred dollars conditioned, among other things, that the said Thomas Medford would pay all such costs as may be awarded against him, and also such damages as should be sustained by any person in case said injunction should be dissolved. The court below made the injunction perpetual. An appeal was taken, and this Court reversed the decree, dissolved the injunction and dismissed the bill. Then this suit was brought for damages sustained by Levy by reason of the injunction. On the trial he proved that for defending the injunction and finally obtaining its dissolution he

such fee was reasonable, and the services rendered worth that amount; and the question here presented is: Is the defendant in the injunction entitled to receive a reasonable amount paid by him as counsel fees necessarily expended in getting rid of the injunction? No decision or discussion of the point has been found in any case decided by this Court, or by the Court of Appeals of Virginia prior to the formation of this State, so that in order to decide it we must look to our statute, the reason and justice of the thing, and to the decisions on the point elsewhere.

There can be no question that it was necessary for Levy to employ counsel and pay them a reasonable compensation in order to get rid of the injunction, to take the case to the appellate court, and have the injunction dissolved, and that such payment was the natural, direct, proximate, actual result of Medford's injunction. He applied for the injunction, knowing that it could not and would not be granted on any other terms; hence the court made it a condition precedent that he should give a bond with good security, binding the surety to pay all such costs as might be awarded against him, and also all such damages as should be incurred or sustained in case the injunction should be dissolved; and he gave it under his hand and seal. Therefore he bound himself by contract to pay them if such damages are covered by the bond. It can not be the taxable attorney's fee, for that is a part of the taxable costs recovered by defendant Medford, the payment of which is expressly provided for as costs in the injunction-bond. What Levy had to pay his attorneys to get the reversal of the decree below making perpetual a wrongful injunction, and the dissolution of the injunction was the direct and proximate result of the operation of the injunction itself—as much so as a surgeon's bill is a result of the negligence of a railroad company which makes it necessary to call one in to attend a wounded passenger.

But it is said it is not allowed to enter into the estimation of damages in any of the common-law actions or in any of the Code substitutes. The answer to this is that if Medford had seen fit to go on with his suit and mature it for hearing without giving any bond, he would not have had any

temporary injunction, but nevertheless a perpetual one at the final hearing; and after it was dissolved by the appellate court, and the suit dismissed, the question could not have been raised, because no bond was given. There was a time in the history of the common-law when that part of plaintiff's declaration, "and therefore he brings his suit" *etc.*, and that part of the judgment of the court, "and that plaintiff take nothing by his bill, but for his false clamor be in mercy" *etc.*, were not mere idle forms. The meaning and effect of these phrases have passed away, and the words, even in conservative England, and in most other places except where common-law modes of procedure still linger, are no longer used, but their reason still lives, and has shown, and is still showing, itself in many new forms, and in none more visibly and universally and with a more generally felt necessity than in injunctions. You may bring an injunction or its substitute, but as it is liable, especially when *ex parte*, to great abuse, an abuse scarcely realized except by those who have a right to speak from long observation and experience, you take it on pain of paying damages, a payment not idle and meaningless, but which must be made sure in case your injunction falls because wrongful and vexatious and damaging. Are we, because of some single case of great abuse, where the hardship is great, and the court feels some delicacy in scaling down an exorbitant fee, or the damage inflicted is past remedy in any true sense, to say that we will abolish the remedy of the injunction? How would or could the English speaking people do without it? But it is said to be against public policy, and that it tends to lower the standard of professional honor. The legislature has said what shall be the conditions of the injunction-bond, and if it is against public policy, let them make it read, "shall pay such costs as may be awarded, and also such damages (not including any compensation, reasonable or other, paid to counsel for getting rid of the wrongful injunction) as shall be incurred or sustained by the person injured in case the injunction be dissolved" *etc.*; or if exorbitant fees tend to lower the standard of professional honor, or court and jury feel a delicacy in cutting them down to fair and reasonable dimensions as .

between strangers, let a limit be fixed, as was done long ago under an older and still more celebrated system of law. ·

But it is contended that as in the case of attachments when dissolved, so in the case of an injunction when ancillary to an original proceeding, reasonable counsel fees may be allowed as part of the damages covered by the injunction-bond. Yet it is not so covered by an injunction-bond in precisely the same language, if the injunction is the relief sought by the bill. See *Turnpike Co.* v. *Dulaney,* 86 Ky. 516 (6 S. W. Rep. 590). I am at a loss to see how precisely the same words in two contracts, each according to the same law, with the same object in view, and relating to the same general subject-matter, can have such different meanings and effect. On the contrary, High. Inj. (3d Ed.) § 1686 says as the result of the authorities:

"The allowance of counsel fees as damages upon dissolving an injunction is based upon the fact that defendant has been compelled to employ aid in ridding himself of an unjust restriction which has been placed upon him by the action of the plaintiff, and the true test with regard to the allowance of counsel fees as damages would seem to be that if they are necessarily incurred in procuring the dissolution of the injunction, when that is the sole relief sought by the action (the bill) they may be recovered; but if the injunction is only ancillary to the principal object of the action, and the liability for counsel fees is incurred in defending the action generally, the dissolution of the injunction being only incidental to the result, then such fees can not be recovered."

The proposition that a reasonable amount of compensation paid as counsel fees in procuring the dissolution of a wrongful injunction may be recovered in an action on the bond as a damage "incurred as direct and immediate as any other" seems to be sustained by a decided preponderance of authority. Mr. High regards it as the well-settled doctrine, notwithstanding the cases of *Oelricks* v. *Spain,* 15 Wall. 211; *Oliphint* v. *Mansfield,* 36 Ark. 191; and *Sensenig* v. *Parry,* 113 Pa. St. 115 (5 Atl. Rep. 11); and he cites some thirty cases from fifteen states in support of his position.

Hil. Inj. (2d Ed.) p. 87, § 54, lays down the same doc-

trine as the result of the authorities: "Counsel fees necessarily incurred in defence of an injunction not consequential on other inquiries, but direct and immediate, may be recovered on the bond." The same general doctrine is laid down in 10 Amer. & Eng. Enc. Law, 990 ; so in 2 Suth. Dam. p. 65. See 1 Sedg. Dam. (7th Ed.) pp. 173, 178, and note ; 2 Sedg. Dam. (7th Ed.) p. 208, and note ; Field, Dam. 442.

It would be a waste of time, and to no useful purpose, to take up one by one the many cases cited by defendant in error. Those cited by appellant have been expressly referred to and in a general way commented on above collectively. Injunctions are liable to abuse. The bond is intended to mitigate it. Counsel fees are sometimes exorbitant, but for this the courts must apply the remedy when it is their business to grant or allow them. Although I can certainly recall no instance within my own observation, yet I think I can safely say that reasonable counsel fees have been in some of our Circuit Courts allowed as a part of the damages embraced by the injunction-bond. Such fees must have been in truth reasonable, for they have never been complained of (perhaps too small for appellate jurisdiction) so that we have no case on the subject. But if it should be found liable to abuse and against sound policy the remedy is plain and simple—expressly except them in the injunction-bond. That they are comprehended as the law now stands, I have but little doubt; and if comprehended, being a matter of contract, prescribed by the legislature, the courts have no right to exclude them on grounds of public policy, of delicacy, or of liability to abuse.

For the reasons given we are of opinion there is no error in the judgment complained of, and it is affirmed.

AFFIRMED.