STATE *ex rel.* ROBERT SHATZER

*v.*

FREEPORT COAL COMPANY, *et al.*

(No. 10991)

Submitted January 20, 1959.    Decided March 10, 1959.

*Spillman, Thomas, Battle & Klostermeyer, Howard R. Klostermeyer, R. Doyne Halbritter,* for plaintiffs in error.

*Milford L. Gibson, James T. Dailey, Jr.,* for defendant in error.

HAYMOND, JUDGE:

In this action of debt instituted in the Circuit Court of Preston County in 1957, the plaintiff, the State of West Virginia, for the use of the relator Robert Shatzer, seeks to recover damages from the corporate defendants, Freeport Coal Company and United States Fidelity and Guaranty Company, upon a bond executed by them to make effective an injunction against the relator issued at the instance of the defendant Freeport Coal Company in the suit in equity of Freeport Coal Company against

Nina Mabel Graham and the relator Robert Shatzer lately pending in the Circuit Court of Preston County.

At the time of the issuance of the injunction on April 20, 1954, the relator, Robert Shatzer, was engaged in mining, by the strip mining method, the Bakerstown seam of coal from a track of 350.75 acres of land in Pleasant District, Preston County, under a verbal lease from Nina Mabel Graham who claimed to be the owner of the coal.

By the injunction, issued at the instance of the defendant Freeport Coal Company, which also claimed to be the owner of the coal, the relator was prevented from mining and removing the Bakerstown seam of coal from the foregoing tract of land during the period April 20, 1954 to April 10, 1956, when the injunction was dissolved and the claim of the defendant Freeport Coal Company to ownership of the coal was denied following a decision of this Court in the companion case of *Freeport Coal Company* v. *Valley Point Mining Company*, 141 W. Va. 397, 90 S. E. 2d 296.

The items constituting the claim of the plaintiff, as set forth in the declaration and the bill of particulars are: 1. rental value of equipment during the term of the injunction, $53,139.75;  2. strip mining bond premium during the term of the injunction, $75.00;  3. cost of moving equipment from the mining operation to another location, $3,395.00;  4. cost of moving equipment back to the operation, $4,074.00;  5. attorney fees in connection with the dissolution of the injunction, $350.00;  6. loss by oxidation of uncovered coal, $2,320.00; and  7. loss of contract for sale of coal, $32,000.00.

To the declaration each defendant filed its separate plea of the general issue.  Upon the trial of the case the jury returned a verdict for the plaintiff against the defendants in the sum of $21,500.00.  The circuit court overruled the motion of the defendants to set aside the verdict and grant a new trial and on July 31, 1957 rendered judgment in favor of the plaintiff for the amount

of the verdict, with interest and costs. To that judgment this Court granted this writ of error on May 19, 1958, upon the petition of the defendants.

It is settled law in this State that reasonable attorneys fees, incurred by the party enjoined in procuring the dissolution of an injunction which was wrongfully issued, are recoverable as an element of damages in an action upon the bond required by Section 9, Article 5, Chapter 53, Code, 1931. *State of West Virginia for use of Stout v. Rogers,* 132 W. Va. 548, 52 S. E. 2d 678; *Humphrey Manufacturing Company v. City of Elkins,* 93 W. Va. 16, 115 S. E. 846; *State for use of Lambert v. Armentrout,* 77 W. Va. 198, 87 S. E. 182; *State v. Friedman,* 74 W. Va. 11, 81 S. E. 830; *State ex rel. Hudson v. Nash,* 72 W. Va. 812, 79 S. E. 829; *State ex rel. Citizens National Bank v. Graham,* 68 W. Va. 1, 69 S. E. 301; *State ex rel. Tully v. Taylor,* 67 W. Va. 585, 68 S. E. 379; *State ex rel. Kloak Brothers and Company v. Corvin,* 51 W. Va. 19, 41 S. E. 211; *State for use of Levy v. Medford,* 34 W. Va. 633, 12 S. E. 864. See also 43 C.J.S., Injunctions, Section 315f(1) ; *State ex rel. Perry v. Adkins,* 116 W. Va. 217, 179 S. E. 816; *State ex rel. The Meadow River Lumber Company v. Marguerite Coal Company,* 104 W. Va. 324, 140 S. E. 49, 55 A.L.R. 452.

The statute relating to the bond required to render an injunction effective provides, in part, that the condition of the bond shall be to pay all such costs as may be awarded against the party obtaining the injunction, and also such damages as shall be incurred or sustained by the person enjoined, in case the injunction be dissolved.

The defendants do not question the right of the plaintiff to recover in this action the item of attorneys fees of $350.00 or the item of the strip mining bond premium of $75.00 which accrued during the period the injunction was in effect and they concede that those two items may be recovered as elements of damages in an action upon the injunction bond.

The circuit court refused to permit the plaintiff to re-

cover any sum for item 1, consisting of rental value of equipment, or item 6, consisting of loss by oxidation of uncovered coal, on the ground that item 1 was not a proper element of damages and also because of lack of sufficient proof of any portion of either of those items and, as there is no cross assignment of error by the plaintiff as to those items, they present no question for consideration or decision upon this writ of error.

The three other items included in the claim of the plaintiff, item 3, representing cost of moving equipment from the mining operation to another location in the amount of $3,395.00, item 4, representing cost of moving equipment back to the operation in the amount of $4,074.00, and item 7, representing loss of contract for the sale of coal in the amount of $32,000.00, remain for consideration; and the controlling question to be determined upon this writ of error is whether the proof establishes all or such part of those items in an amount equal to, or sufficient to support, the verdict returned by the jury in the sum of $21,500.00.

When the injunction was issued on April 20, 1954, the relator Robert Shatzer had been mining the Bakerstown seam of coal upon the tract of 350.75 acres since January 1954, a period of about four months. Under his lease from Nina Mabel Graham he was required to pay a royalty of twenty five cents per ton. He had sold some of the coal which he had mined for $2.28 and $2.33 per ton. He had orders but no contract for the sale of approximately 24,650 tons of coal at the price of $3.60 per ton and his operation was capable of producing from 8,000 to 12,000 tons of coal per month from the Bakerstown seam.

When the injunction became effective there were approximately 200,000 tons of recoverable coal of the Bakerstown seam in the tract of 350.75 acres and while the injunction was in force none of that coal was mined by the relator. In January 1957, following the dissolution of the injunction on April 10, 1956, the relator resumed his mining operation on the tract of 350.75 acres and

from that time until the trial in June 1957 he continued to mine coal from that tract of land. The price at which he has sold the coal mined since the dissolution of the injunction has been at least $3.95 per ton.

Within about two and one-half months after the injunction became effective the relator moved his mining equipment from the 350.75 acre tract to another location, about fifteen or sixteen miles from his Bakerstown coal operation, and during the period the injunction was in effect, he conducted a strip mining operation in the Freeport seam of coal. This continued until the dissolution of the injunction; and within a few weeks after the injunction was dissolved the relator moved his mining equipment back to the 350.75 acre tract and used the equipment in the resumption of that operation.

While the injunction was in effect from April 20, 1954 to April 10, 1956, and while operating the Freeport seam of coal at another location during that period the relator mined and sold 200,227.90 tons of Freeport coal at an average price of $2.27 per ton for which he received the total amount of $455,538.94. After deducting royalty of $43,462.05 the gross income from the Freeport operation was $412,076.89. The expenses of that operation during that period amounted to $345,568.56. The difference between the gross income of $412,076.89 and the total expenses of $345,568.56 represented the net profit of $66,-508.33.

As to the operation of the Bakerstown seam of coal on the 350.75 acre tract which was interrupted and entirely suspended by the injunction during the period it was in effect, the relator estimated that he would have mined and sold 189,333 tons of coal at the price of $3.60 per ton or the total price of $681,598.80, less a royalty of $48,333.00, and would have received a gross income of $634,265.80; that the expense of such operation less hauling charges would have been $226,162.50; that the hauling charges would have been $94,666.00; and that the estimated additional cost of producing increased ton-

nage from April 20, 1954 to December 31, 1954 would have been $15,056.44 or a total expense of $335,884.94. The difference between the gross income of $634,265.80 and the total expense of $335,884.94 represented a profit of $298,380.86 which the relator claims he would have made if he had not been prevented from operating the 350.75 acre tract during the period the injunction was in effect. This estimate was derived from figures compiled by an accountant who worked on and supervised the books and was familiar with the mining records of the relator which were based on information furnished by the relator.

The undisputed evidence is that no part of the mineable Bakerstown seam of coal on the 350.75 acre tract was removed, lost, or destroyed as a result of the injunction or during the period in which it was in effect. The relator estimated that there were approximately 200,000 tons of mineable coal of that seam when the injunction became effective and that there was the same amount of such coal when the injunction was dissolved. The evidence shows that the price at which the coal mined since the dissolution of the injunction was sold was $3.95 per ton instead of the price of $3.60 per ton at which the relator asserts he could have sold the coal during the time the injunction was in effect. The evidence also indicates that it is likely that he may sell the coal which he has been mining since the dissolution of the injunction for as much as $4.40 per ton. It therefore appears from the foregoing evidence that the only loss incurred with respect to the amount of available mineable coal is the loss of the use of the property in connection with his mining operation and the suspension or interruption of that operation for the period of approximately two years during which the injunction was in effect. If some of the mineable coal had been mined, lost, or destroyed as a result of the injunction, the value of such coal, or the difference between the contract price for its sale and the cost of its production, would constitute the loss incurred and caused by the injunction and the amount of such

loss could readily and definitely be ascertained and determined. No situation of that type and no loss of the kind just indicated, however, occurred or resulted from the issuance of the injunction.

In some jurisdictions loss of profits, if not speculative or contingent, may be a proper element of damage if the owner of property is wrongfully deprived of its use or if deprivation of the use of the property results in the interruption of an established business; in other jurisdictions there can be no recovery for loss of profits due to the deprivation of the use of property even though such deprivation results in the interruption of a factory or plant. The proper measure of damage is the value of the use or rental value of the property, and any expenses necessarily incurred, and evidence of past profits is admissible to assist the jury in ascertaining the proper amount to be allowed. 15 Am. Jur., Damages, Section 156. See also *State ex rel. Bush* v. *Carden,* 111 W. Va. 631, 163 S. E. 54.

As a general rule, the expected profits of a mercantile business are too remote, speculative, and uncertain to sustain a judgment for their loss, and on that ground recovery for the loss of future profits caused by the interruption or destruction of an established business has been denied, unless the act which caused such loss was malicious. According to the weight of authority, however, recovery may be had for such losses where they are reasonably certain in character and are the proximate result of tort or breach of contract. Proof of only the gross receipts of a business is not sufficient. The proof must not consist of mere conjecture, speculation, or opinion not founded on facts, but must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn. It must be shown that the business which has been interrupted was an established business and had been successfully conducted for a sufficient length of time with an established trade to enable its profits to be ascertained with reasonable cer-

tainty. Prospective profits of a new business or enterprise are generally regarded as too remote, contingent and speculative to satisfy the requisite standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of a contract or for a tort. 15 Am. Jur., Damages, Section 157.

The practical effect of the injunction was to deprive the relator of the use of his property in connection with the mining of the Bakerstown seam of coal on the 350.75 acre tract and the delay in the operation of his strip mining project for the period of approximately two years during which the injunction remained in effect. The relator did not, however, offer any evidence of the value of the use or the rental value of the property of which he was deprived or any satisfactory evidence of any expenses necessarily incurred in connection with the interruption of his operation. He offered no evidence whatsoever of any profit gained or any loss sustained in his strip mining operation of the Bakerstown seam of coal during the period from January 1954 to the date of the issuance of the injunction or during the period after its dissolution from January 1957 to the date of the trial in June 1957. If any profit was realized from the operation during either of those two periods of time the evidence fails to disclose the amount of any such profit. The relator offered no evidence to show the actual cost or expense of producing and selling any of the coal actually mined and sold by him from the Bakerstown seam of coal on the 350.75 acre tract either before the issuance of the injunction or after its dissolution.

The evidence introduced by the relator to establish the loss sustained by him in moving his equipment to another location and, after the dissolution of the injunction, in moving it back to the location of his Bakerstown operation, consisting of item 3 in the amount of $3,395.00 and item 4 in the amount of $4,074.00, is utterly insufficient for that purpose. As to the cost of moving the equipment to another location the relator stated on his examination

in chief "I feel it was $3,395.00 to move this equipment off the job." As to the cost of moving the equipment back to the 350.75 acre tract after the injunction was dissolved he testified that the cost was twenty per cent more to move the equipment back than it had been to move it originally and that the amount of the cost was $4,074.00. On cross-examination he admitted that he did not know in exact figures how much it cost him to move the equipment and that the amount of each item was an estimated amount and did not represent any record of the actual cost of either movement of the equipment. Though it appeared that the labor of moving the equipment was performed by employees of the relator he offered no evidence of the amount of the actual cost of the labor or of the actual transportation cost or any other cost actually incurred in connection with the movement of the equipment though it would seem that the amount of the cost could have been readily ascertained and established by proper evidence.

In the frequently quoted and widely recognized passage in High on Injunctions, Fourth Edition, Volume 2, Section 1663, the rule to determine recoverable damages sustained by the improper issuance of an injunction, is discussed in this language: "In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds, and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. And where no damages have been actually incurred, none should be asssessed. In other words, the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence. Thus, remote and contingent benefits that might have accrued

* * *, will not be taken into account in an action upon the bond. And the only damages which can be recovered are such as arise from the operation of the injunction itself, * * *."

A portion of the foregoing text from High on Injunctions was quoted with approval by this Court in *State ex rel. Kloak Brothers and Company* v. *Corvin*, 51 W. Va. 19, 41 S. E. 211. In 28 Am. Jur., Injunctions, Section 343, the text contains this statetment: "The law does not, however, permit recovery on the bond for damages which are remote, conjectural, or speculative, or so uncertain as to be incapable of ascertainment." 43 C.J.S., Injunctions, Section 312, with reference to the damages recoverable upon an injunction bond, is in these words: "Such damages as are remote, conjectural, or speculative cannot be recovered." In *State of West Virginia for use of Stout* v. *Rogers*, 132 W. Va. 548, 52 S. E. 2d 678, this Court used this language: "It is elemental that damages on injunction bonds which are remote, conjectural, or speculative, can not be recovered. * * *. There must be proof which furnishes reasonable certainty of damage and the amount thereof." Juries will not be permitted to base their findings of damages upon conjecture or speculation. *Ritz* v. *Kingdon*, 139 W. Va. 189, 79 S. E. 2d 123; *Oates* v. *Continental Insurance Company*, 137 W. Va. 501, 72 S. E. 2d 886; *Turk* v. *McKinney*, 132 W. Va. 460, 52 S. E. 2d 388.

In *Ohio-West Virginia Company* v. *Chesapeake and Ohio Railway Company*, 97 W. Va. 61, 124 S. E. 587, 38 A.L.R. 1439, this Court, discussing loss of profits as an element of damages, used this language:

"An inspection of the decisions reveals that where loss of profits is claimed as an element of damages for *breach of contract*, or loss of profits of sale or purchase as a result of *breach of contract*, the profits must be proximate, absolute and certain, not remote, contingent or uncertain; and must be such as must have reasonably been within the contemplation of the contracting parties at

the time the contract was made. In actions of tort the rule is somewhat different in that the doctrine of loss of profits contemplated at the time the contract was made if a breach be had by either party, has no application. *Allison* v. *Chandler,* 11 Mich. 542; *Terre Haute* v. *Hudnut,* 112 Ind. 542, 13 N. E. 686. * * *.

"However it is equally well established that where loss of profits by reason of a tort are allowed, they must be such as would naturally be expected to follow the wrongful act and are certain both in their nature and in respect to the cause from which they proceed. *Wolff* v. *Hyass,* 11 Misc. 561, 32 N. Y. Supp. 798. *Lowrie* v. *Castle,* 225 Mass. 37, 113 N. E. 206; *Johnson* v. *Atlantic Coast Line,* 140 N. C. 574; 17 C. J. Page 794, Sec. 116. 'The modern rule, however, does not deny a recovery of profits because of the fact that they are profits, but because they are speculative, contingent or uncertain, and while there are many cases in which they have been denied upon these grounds, the generally accepted rule is that, where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty, there may be a recovery therefor, but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated. So, evidence to establish profits must not be uncertain or speculative.' 17 C. J. Page 785, Sec. 112."

Loss of profits can not be based on estimates which amount to mere speculation and conjecture but must be proved with reasonable certainty. *Mullins* v. *Baker,* 144 W. Va. 92, 107 S. E. 2d 57; *State of West Virginia for use of Stout* v. *Rogers,* 132 W. Va. 548, 52 S. E. 2d 678. See also *Kyle* v. *Ohio River Railroad Company,* 49 W. Va. 296, 38 S. E. 489; *Shenandoah Milling Company* v. *Phosphate Products Corporation,* 161 Va. 642, 171 S. E. 681; *Gribb* v. *Buford,* 98 Va. 553, 37 S. E. 4; *Burruss* v. *Hines,* 94 Va. 413, 26 S. E. 875. In *Douglass* v. *Ohio*

*River Railroad Company,* 51 W. Va. 523, 41 S. E. 911, this Court held in point 5 of the syllabus that "Mere speculative and conjectural estimates of profits which might have been made, or of the loss of gains and profits which might have been made, are not a legitimate basis upon which to fix damages." See also *James and Mitchell* v. *Adams,* 8 W. Va. 568. Profits may be recovered only when they can be estimated with reasonable certainty. *Kyle* v. *Ohio River Railroad Company,* 49 W. Va. 296, 38 S. E. 489; *Kirkorian* v. *Dailey,* 171 Va. 16, 197 S. E. 442; *American Oil Company* v. *Lovelace,* 150 Va. 624, 143 S. E. 293. In 5 M. J., Damages, Section 38, the text contains this language: "In accordance with the general rule concerning speculative damages, mere speculative and conjectural estimates of profits which might have been made, or the loss of gains and profits which might have been made, are not a legitimate basis upon which to fix damages. Profits may only be recovered when they can be ascertained with reasonable certainty."

The verdict of a jury in favor of a plaintiff, based on testimony which does nothing more than furnish ground for conjecture or speculation, as to the proper verdict to be returned, can not be justified, and will be set aside by this Court. *State of West Virginia for use of Stout* v. *Rogers,* 132 W. Va. 548, 52 S. E. 2d 678. A verdict based on uncertainty and inconclusiveness can not serve as a basis of a judgment. *Chambers* v. *Spruce Lighting Company,* 81 W. Va. 714, 95 S. E. 192. When the evidence is insufficient to warrant the finding of the jury, the verdict should be set aside and a new trial awarded. *Sanaker* v. *Cushwa,* 3 W. Va. 29. A verdict clearly in excess of the amount which the evidence shows the plaintiff is entitled to recover should be set aside by the trial court. *McCabe* v. *The City of Parkersburg,* 138 W. Va. 830, 79 S. E. 2d 87; *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731; *Oresta* v. *Romano Brothers, Inc.,* 137 W. Va. 633, 73 S. E. 2d 622; *Drummond* v. *Cook Motor Lines, Inc.,* 136 W. Va. 293, 67 S. E. 2d 337; *Thomason and Beggs* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Welty* v. *Baer,* 107 W. Va. 226, 148 S. E. 193.

The evidence offered in behalf of the relator to establish the items of damages which he seeks to recover in connection with the movement of his mining equipment from the 350.75 acre tract to another location and back to the 350.75 acre tract after the dissolution of the injunction, showing merely an estimate of the amount of damage sustained, not disclosing any specific item of the actual cost of labor or transportation incurred in the movement of the equipment, and not being supported by any receipt or voucher or other record evidence of the payment of any such cost, is not sufficient to support a finding in favor of the relator for any portion of the cost in items 3 and 4 of the claim of the relator.

The evidence of the gross receipts from the mining of the Freeport seam of coal by the relator, the cost of production of that coal, and the profits realized from that operation, does not constitute proof of any damages sustained by the relator or of the loss of any profits incurred by him as a result of the issuance of the injunction. That the relator realized a profit from his mining operation in the Freeport seam of coal does not prove or tend to prove that he would have made any profit or that he would not have incurred a loss if he had conducted his operation in the Bakerstown seam of coal while the injunction was in effect. The successful operation of the Freeport seam of coal by the relator at a different location is no indication whatsoever, and is of no aid in ascertaining, that he would have made a profit or suffered a loss by his operation of the Bakerstown seam of coal during the period of the injunction. In this connection the opinion in *American Oil Company* v. *Lovelace,* 150 Va. 624, 143 S. E. 293, contains this significant language: "No business runs itself. The fact that one retail grocery is a success would aid us little in ascertaining in advance what the profits of another would be. Any finding of a jury would be guesswork, and judgment cannot be predicated on conjecture." The evidence by which the relator seeks to establish loss of profits resulting from the interruption or suspension of his strip mining operation of the Bakerstown seam of coal while

the injunction was in effect is wholly insufficient for that purpose and the damages alleged to have resulted from the injunction, except the items of attorneys fees of $350.00 and strip mining bond premium of $75.00, are remote, conjectural, speculative, and too uncertain to be capable of reasonable ascertainment. For that. reason the alleged loss of profits as an element of damages in item 7 of the claim of the relator can not be recovered in an action on an injunction bond.

As the amount of the damages established by the evidence, consisting solely of the item of attorneys fees of $350.00 and the item of strip mining bond. premium of $75.00, is considerably less than the amount of the verdict, the verdict should have been set aside on that ground by the circuit court; and its refusal to sustain the motion of the defendants to set aside the verdict and grant a new trial constituted reversible error.

Instruction No. 2, offered by the plaintiff and given by the circuit court, told the jury that in assessing such damages as the defendants owed the plaintiff the jury was entitled to consider the attorneys fees expended in procuring the dissolution of the injunction, the reasonable costs expended and incurred by the plaintiff in moving the mining equipment from its original location after the injunction went into effect and also the costs expended and incurred by the plaintiff in returning the equipment to that location after the dissolution of the injunction, and the loss of profits, if any, suffered by the plaintiff by reason of the injunction during the period it was in effect from April 20, 1954 to April 10, 1956. As the evidence failed to show that the relator expended any sum in connection with the cost of moving and returning the equipment and also failed to establish any loss of profits suffered by the plaintiff by reason of the injunction, the instruction was erroneous and should have been refused; and the action of the circuit court in giving the instruction was reversible error.

An instruction which assumes a fact as to which there

is no competent evidence should not be given. *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Williams* v. *County Court of Lincoln County,* 90 W. Va. 67, 110 S. E. 486; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106. An instruction which is not based on any appreciable evidence of material facts or which misstates the evidence should not be given. *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *State* v. *Hayes,* 109 W. Va. 296, 153 S. E. 496; *Morgan Lumber and Manufacturing Company* v. *Surber,* 104 W. Va. 308, 140 S. E. 12; *Roberts* v. *Lykins,* 102 W. Va. 409, 135 S. E. 388; *State* v. *Newman,* 101 W. Va. 356, 132 S. E. 728.

Instruction No. 8, offered by the defendants and refused by the circuit court, was properly refused for the reason that it was not based upon the evidence.

The final judgment of the Circuit Court of Preston County is reversed, the verdict of the jury is set aside, and this case is remanded to that court for a new trial which is here awarded the defendants.

*Judgment reversed,*
*verdict set aside,*
*new trial awarded.*