**WATER ENGINEERING CONSULTANTS, INC., a West Virginia Corporation, Plaintiff,**

v.

**ALLIED CORPORATION, a Delaware Corporation, Defendant,**

v.

**Jack T. RICE, William L. Nasby, W. James Parker, Richard Cantley, and C.S. West, Individuals, Intervenor-Plaintiffs.**

Civ. A. No. 1:85–0576.

United States District Court, S.D. West Virginia, Bluefield.

Dec. 17, 1987.

Kermit Moore and Jerry Cameron, Hudgins, Coulling, Brewster, Morhous & Cameron, Bluefield, W. Va., for plaintiff.

Michael Gibson, Johnston, Holroyd & Gibson, Princeton, W. Va., for intervenor-plaintiffs.

David P. Thomas, John H. Tinney, and Debra C. Price, Spillman, Thomas, Battle & Klostermeyer, Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

HALLANAN, District Judge.

This matter is before the Court via the Defendant's motions for summary judgment against Plaintiff and Plaintiff–Intervenors. On the 14th day of December, 1987, came the parties, by counsel, for the purposes of a final settlement conference. After the parties assured the Court that a settlement herein was not possible, the Court proceeded to hear argument on the

motions for summary judgment. After careful consideration of the pleadings, memoranda and argument of counsel, it was, and remains ORDERED that said motions be GRANTED and that summary judgment be entered in favor of Defendant for the reasons stated by the Court at said conference on the record as well as those reasons enumerated *infra.*

## I. *Factual Background*

Except for a few circumstances, the facts in this case are undisputed.

Plaintiff was incorporated in 1982 by Rodney Welder and David Cantley for the purpose of selling certain water treatment chemicals to the coal industry. In 1983, Plaintiff entered into contracts with Plaintiff–Intervenors whereby Plaintiff–Intervenors would be sales representatives for Plaintiff on an independent contractor basis and Plaintiff–Intervenors shortly thereafter began to perform that function.

Sometime in 1983, Plaintiff's representatives contacted a representative of Defendant to inquire into the possibility of becoming a distributor for Defendant's water treatment polymers. Extensive negotiations ensued resulting in a blank form contract being provided to Plaintiff as an example of the type of arrangement that was customary for Defendant.

A few days later Defendant sent to Plaintiff a second form contract which had the "blanks" filled in and was signed by a representative of Defendant. Plaintiff then made at least one change on the contract which changed the term of the contract from one year to four years, signed the contract and sent it back to Defendant. It is disputed whether or not Defendant agreed orally to this modification, but it is undisputed that the modification was not agreed to in writing.

After Plaintiff returned the second form contract to Defendant, Plaintiff and Plaintiff–Intervenors proceeded to attempt to solicit sales of Defendant's polymers to the coal industry. In August of 1984, Plaintiff contacted Defendant to request information relative to the price list of Defendant's products even though Plaintiff had received no orders for any of Defendant's polymers. Defendant then notified Plaintiff that its price for the polymers would be the "consumer list price" inasmuch as it was Defendant's position that no contract existed between it and Plaintiff.

Plaintiff then brought suit against Defendant on May 20, 1985 alleging breach of contract. By Order entered July 31, 1986, this Court allowed Plaintiff–Intervenors to intervene and file a complaint against Defendant. In said complaint, Plaintiff–Intervenors allege breach of contract as third-party beneficiaries and interference with the contractual relationship between Plaintiff and Plaintiff–Intervenors.

Defendants moved for summary judgment against Plaintiff on the basis that no contract existed and that, assuming *arguendo* that a contract did exist, Plaintiff can prove no damages on lost profits. Defendant has moved for summary judgment against Plaintiff–Intervenors on the basis that: (1) they were not third-party beneficiaries to the contract; (2) Plaintiff–Intervenors have not met the requisite elements of a interference with a business relationship test; and (3) Plaintiff–Intervenors can prove no lost profits damages; and (4) Plaintiff–Intervenor's failure to supply requested discovery is deserving of dismissal as a sanction pursuant to Fed.R.Civ.P. 37. The Court will address each issue herein *in seriatim.*

## II. *Defendant's Motion for Summary Judgment Against Plaintiff*

### A. *Existence of a Contract*

■ It is clear that under the terms of the form contract at issue no modifications could be made except in writing. Additionally, W.Va.Code § 55–1–1 provides in pertinent part that: "No action shall be brought ... (f) upon any agreement that is not to be performed within a year; unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent."

Plaintiff cites no authority to show that the Statute of Frauds, W.Va.Code § 55–1–1, is inapplicable to this case and

the Court knows of no such authority. It is precisely this type of case which the Statute of Frauds was formulated to prohibit. *Gibson v. Stalnaker*, 87 W.Va. 710, 106 S.E. 243 (1921).

Plaintiff argues that there exists a question of fact as to whether there was a meeting of the minds. It is clear that in order to grant a motion for summary judgment there must exist no genuine issues of material fact. *Ross v. Communications Satellite Corporation*, 759 F.2d 355 (4th Cir.1985). However, even viewing the evidence in the light most favorable to the Plaintiff, there is no factual dispute on the issue of the form contract being modified orally rather than in writing as required by W.Va.Code § 55–1–1 as well as the form contract itself. Accordingly, under the law, the Court finds that any contract which existed herein was oral and therefore violative of the Statute of Frauds and as such is unenforceable.

### B. *Damages*

Defendant next argues that Plaintiff cannot prove any evidence of lost profits to a reasonable certainty as required by *Eckington and Soldier's Home Railway Co. v. McDevitt*, 191 U.S. 103, 24 S.Ct. 36, 48 L.Ed. 112 (1903).

The only issue this Court must deal with is whether the testimony of Plaintiff's expert, Dr. Mentzer, proves Plaintiff's loss of profits to a reasonable certainty. The Plaintiff admits that Dr. Mentzer's testimony is the only evidence it has as to the amount of lost profits.

Briefly, Dr. Mentzer bases his testimony of certain coal industry bulletins which set forth coal industry production projections, Plaintiff–Intervenors and Plaintiff's representatives' work resumes, and Plaintiff's tax return for the two previous years. He then projected that a company which netted $2500 its first year of operation and lost $3000 its second year would net $6.2 million dollars a year for the four years the alleged contract was in effect.

This Court can only admit an expert's opinion when competent evidence proves to a degree of reasonable certainty that Plaintiff will suffer the claimed damages. *Bak-*er v. Kroger, 784 F.2d 1172 (4th Cir.1986). In the case at bar, no such competent evidence exists. Plaintiff could not call one witness to testify that he or it would have purchased Allied's product from Plaintiff. Additionally, the West Virginia law looks with disfavor and apprehension at recovery of lost profits by a new business. In *State ex rel Shatzer v. Freeport Coal Company, et al.*, 144 W.Va. 178, 107 S.E.2d 503 (1959), the West Virginia Supreme Court of Appeals held that:

> According to the weight of authority, however, recovery may be had for such losses where they are reasonably certain in character and are the proximate result of tort or breach of contract. Proof of only the gross receipts of a business is not sufficient. The proof must not consist of mere conjecture, speculation, or opinion not founded on facts, but must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn. It must be shown that the business which has been interrupted was an established business and had been successfully conducted for sufficient length of time with an established trade to enable its profits to be ascertained with reasonable certainty. Prospective profits of a new business or enterprise are generally regarded as too remote, contingent and speculative to satisfy the requisite standard of reasonable certainty in determining the elements of recoverable damages in an action for breach of a contract or for a tort. 15 Am.Jur., *Damages*, Section 157.

*Id.* 107 S.E.2d at 508.

It is clear to the Court that Dr. Mentzer's testimony is based entirely on speculation and is not founded on actual facts. Plaintiff's representative testified himself in his deposition that any estimate as to lost profits would be speculative.

Accordingly, the Court finds that Plaintiff is unable to prove any lost profits to a reasonable certainty and thus Defendant is also entitled to summary judgment on this issue.

Therefore, it hereby is ORDERED that Defendant's motion for summary judgment against Plaintiff be and it is, GRANTED. It is further ORDERED that summary judgment be entered in favor of Defendant and against Plaintiff.

### III. *Defendant's Motion for Summary Judgment Against Plaintiff–Intervenors*

#### A. *Third Party Beneficiaries*

 In order to prevail on a third beneficiary claim, Plaintiff–Intervenors must show that the alleged contract was entered into with the intent to benefit them. Inasmuch as the Court has held that an enforceable contract does and did not exist, Plaintiff–Intervenors' third-party beneficiary claims necessarily fail.

#### B. *Intentional Interference with Business Relationship*

In order to sustain an action, Plaintiff–Intervenors must show:

(1) The existence of a contractual or business relationship;

(2) An intentional act of interference with that relationship by a party outside the relationship;

(3) Proof that the interference caused the harm sustained; and

(4) damages.

*Torbett v. Wheeling Dollar Savings & Trust Co.,* 314 S.E.2d 166 (W.Va.1983).

Tortious interference requires a purposeful wrongful act without justification or excuse. *Meyer v. Washington Times Co.,* 76 F.2d 988 (D.Cir.1935), *cert. denied* 295 U.S. 734, 55 S.Ct. 646, 79 L.Ed. 1682 (1935). Plaintiff–Intervenors produced during discovery in this matter no evidence that Defendant intended to interfere with the relationship between Plaintiff–Intervenors and Plaintiff in any way. Thus, Plaintiff–Intervenor's tortious interference claim must fail.

#### C. *Damages*

For the reasons stated *supra,* the Court finds that Plaintiff–Intervenors in relying on the testimony of Dr. Mentzer can prove no competent evidence that Plaintiff–Intervenors would have suffered profits to a reasonable certainty. Accordingly, any claim for lost profits must also fail.

#### D. *Failure to Supply Requested Discovery*

In light of the Court's findings on the other grounds of this motion, it is unnecessary for the Court to address this ground of Defendant's motion.

Accordingly, for all the reasons stated *supra,* it is hereby ORDERED that Defendant's motion for summary judgment be GRANTED and summary judgment be entered in favor of Defendant and against Plaintiff–Intervenors.

The Clerk is directed to send a certified copy of this Order to counsel of record.