# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Karen Nance, individually and as the managing general partner of the Historic Barnett Apartments, L.P., Historic Barnett Apartments, L.P., and the Old House Doctor, a West Virginia Sole Proprietorship, Plaintiffs Below, Petitioners**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-0855** (Cabell County 12-C-380)

**Huntington West Virginia Housing Authority, Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Karen Nance, individually and as the managing general partner of the Historic Barnett Apartments, L.P., Historic Barnett Apartments, L.P., and the Old House Doctor, a West Virginia Sole Proprietorship, by counsel J. Patrick Stephens, appeal the Circuit Court of Cabell County's order granting Respondent Huntington West Virginia Housing Authority's motion for summary judgment, entered on August 12, 2016. Respondent Huntington West Virginia Housing Authority, by counsel Perry W. Oxley and L.R. Sammons III, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

On March 14, 2008, Petitioners Karen Nance, individually and as the managing general partner of the Historic Barnett Apartments, L.P., Historic Barnett Apartments, L.P., and the Old House Doctor, a West Virginia Sole Proprietorship (collectively, "petitioners") purchased the Historic Barnett Hospital and Nursing School to redevelop the property into low income housing to serve the Huntington, West Virginia community. The project called for development of nine 1-bedroom apartments, and was to be privately owned and for-profit. Petitioners sought to benefit from grant funding under the federal Neighborhood Stabilization Program ("NSP") authorized under the American Recovery and Reinvestment Act of 2009. The NSP provided grant funding to state governments, local governments, and nonprofit organizations on a competitive basis in an attempt to revive the housing market after the economic recession in 2008. Petitioners' claims matter stem from its denial of such funding.

1

In July of 2009, petitioners entered into a "Consortium Agreement" with Respondent Huntington West Virginia Housing Authority ("respondent") and the Housing Development Corporation. As part of the agreement, respondent served as the lead applicant for the NSP grant funding, and as such, was responsible for implementing and ensuring compliance with all grant requirements. Respondent executed an NSP contract with the West Virginia Development Office ("WVDO"), in which respondent requested that a portion of the funds awarded to the State of West Virginia be awarded to the Consortium. Termination of the Consortium Agreement required sixty days notice to all parties.

One of the key requirements of the NSP was that twenty-five percent (25%) of the funds awarded to the State be devoted to persons with household incomes not exceeding fifty percent (50%) of the area median income. This requirement was referred to as the "25% set aside" requirement. Petitioners' project did not meet this requirement.

In December of 2009, then-Governor Joe Manchin informed respondent that the NSP contract application had been approved in the amount of $2,177,974, including $928,952 for petitioners' project. The parties initially believed that each project within the Consortium was eligible for NSP funding. However, the WVDO and Cloudburst Consulting, Inc. ("Cloudburst") subsequently advised respondent that certain projects within the Consortium, including petitioners' project, were ineligible. WVDO employees Michael Browning and Jeanna Bailes, both of whom were closely involved in the grant application, signed affidavits stating that they did not become aware of the eligibility problems until a May 13, 2010, meeting. In this meeting, Petitioner Karen Nance indicated that she purchased the subject property in 2008, prior to the enactment of the NSP legislation, which, according to the WVDO, rendered her project ineligible for NSP funding.

As a result of the eligibility problems with some of the projects within the Consortium, the WVDO reduced the amount of the Consortium's NSP funding from $2,177,974 to $1,391,323. Additionally, the WVDO required that approximately eighty-five percent (85%) of the funding to the Consortium be spent on projects that met the "25% set aside" requirement. The remaining 15% of the NSP funds were eligible for use on projects that did not meet the "25% set aside" requirement; however, this amount (approximately $200,000) was insufficient to fully fund petitioners' project. On May 21, 2010, respondent sent a letter to the WVDO requesting that petitioners' project be removed from the Consortium. In petitioners' place, respondent selected one of its own projects, known as Artisan Heights, to receive NSP funding. Artisan Heights, like petitioners' project was purchased prior to the enactment of the NSP legislation; however, the non-25% set aside funding was sufficient to complete the project, and it was not a for-profit project. On June 18, 2010, the WVDO sent a letter to respondent in which it stated, in pertinent part, that "when it became apparent that the original parties would not meet the 25% set aside requirement of the NSP Grant which was the intent when [respondent's] application was selected for funding, our office required [respondent] to select new properties."

On June 12, 2012, petitioners filed suit against respondent, the WVDO, and Cloudburst. The WVDO and Cloudburst were subsequently dismissed from the case, leaving respondent as the sole defendant. Against respondent, petitioners asserted claims of negligence, breach of

contract, breach of duty of good faith, and promissory estoppel.[1] Respondent filed a motion for summary judgment in September of 2014, in which it contended that petitioners' damages were caused by (1) the fact that petitioners purchased the property before the enactment of the NSP legislation; (2) petitioners' property had not been abandoned or foreclosed upon when it was purchased; (3) the WVDO reduced the amount of the grant; (4) petitioners' project was not a 25% set aside project; and (5) and there were not enough non-set aside funds to fully support petitioners' project. On December 3, 2014, the circuit court conducted a hearing on respondent's summary judgment motion. The circuit court directed the parties to engage in additional discovery, specifically, the depositions of Jeanna Bailes and Cloudburst employee Julia Pierson. The parties complied with the circuit court's directive and took the depositions.

Ms. Bailes testified that the WVDO relied heavily on respondent to assist the State in satisfying the 25% set aside requirement with respect to the total amount of grant funding awarded to the State. Significantly, Ms. Bailes testified that if one grantee failed to properly allocate grant funds, then the State was at risk of losing the entirety of its funding. Ms. Bailes opined, therefore, that respondent was under pressure from the WVDO to ensure money was properly awarded, or it would go to other grantees. Neither Ms. Bailes nor Ms. Pierson testified that if there was no Consortium Agreement between respondent and petitioners that petitioners' project would have received funding.

Following these two depositions, respondent filed an amended motion for summary judgment, which the court took up for hearing on June 2, 2016. By order entered August 12, 2016, the court granted summary judgment in favor of respondent. With respect to petitioners' breach of contract claim, the court concluded that the Consortium Agreement did not entitle petitioners to NSP grant funding or evidence a promise by respondent to fund petitioners' project; rather, the Agreement was a contractual mechanism for the group to seek NSP funding. The court determined that respondent's failure to provide the required sixty days notice prior to termination was immaterial and did not cause petitioners' project to be removed from the Consortium. Accordingly, the court dismissed the breach of contract claim. The circuit court likewise dismissed the breach of good faith claim on the basis that such a claim does not exist separate and apart from a breach of contract claim.

With respect to petitioners' claim of promissory estoppel, the circuit court concluded that petitioners presented no evidence that respondent promised NSP grant funding and then breached that promise. Accordingly, the circuit court dismissed the promissory estoppel claim.

Finally, with respect to petitioners' negligence claim, the circuit court concluded that respondent, as lead applicant, was charged with deciding whether to remove petitioners' project from the Consortium or include the project and risk losing all of its NSP funding. The circuit court concluded that, as a result of this choice being presented to respondent, respondent owed no duty to petitioner to keep petitioners' project included. However, the circuit court further concluded that, assuming arguendo that a duty existed, respondent's decision to choose its own project to replace petitioners' project, given petitioners' eligibility problems, did not constitute a

---

[1] Petitioners also asserted claims for negligent and intentional misrepresentation, which were later withdrawn.

breach of a duty as a matter of law. Even assuming that there was a duty and a breach, the circuit court concluded that petitioners failed to establish that the breach was the proximate cause of their alleged damages. Stated another way, the circuit court concluded that petitioner failed to introduce any evidence that "but for [respondent] removing [petitioners'] project from the Consortium, [petitioners] would have received NSP funding and [the] project would have been fully funded." Petitioners now appeal to this Court.

## Discussion

On appeal, petitioners argue that the circuit court erred by (1) granting summary judgment on their negligence claim; (2) granting summary judgment on their breach of contract claim; and (3) applying a heightened standard of proof to their negligence and breach of contract claims. This Court has held that

> [a] grant of summary judgment "shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." W.Va.R.Civ.P. 56(c). Summary judgment is not a remedy to be exercised at the circuit court's option; it must be granted when there is no genuine disputed issue of a material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986); *Williams* [*v. Precision Coil, Inc.*]*,* 194 W.Va. at 59 n. 7, 459 S.E.2d at 335-36 n. 7 ("[i]f the nonmoving party does not controvert the proof offered in support of the motion, and the moving party's affidavit shows that it supports a judgment as a matter of law, Rule 56(c) mandates summary judgment be granted").

*Powderidge Unit Owners Ass'n v. Highland Properties, Ltd*., 196 W. Va. 692, 698, 474 S.E.2d 872, 878 (1996). We review the circuit court's grant of summary judgment de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994).

The following elements of a negligence claim are well-settled:

> "In every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries received thereby, resulting proximately from the breach of that duty."

*Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939). "In order to establish a prima facie case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 866, 280 S.E.2d 703 (1981).

4

With respect to its negligence claim, petitioner argues that there was a special relationship between petitioners and respondent due to the Consortium Agreement, and this special relationship created a duty of care. We have held as follows:

> An individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor.

Syl. Pt. 9, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000). Additionally,

> [t]he existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

*Id.* at 499, 541 S.E.2d at 589.

Petitioners further contend that the funding reduction was caused by respondent's failure to meet deadlines; its failure to advance projects that met the 25% set aside; and by telling the WVDO that 85% of its projects would meet the set aside requirement. According to petitioner, this conduct by respondent constituted a breach of its duty of care. As for evidence of proximate cause, petitioner argues that the circuit court was wrong to conclude that petitioners' project was ineligible to receive funds because both the Artisan Heights project and petitioners' project were purchased before the enactment of the legislation. Petitioner argues that, by choosing its own project over petitioners' project, respondent caused petitioners' damages.

Upon our review of the record, we agree with the circuit court that respondent owed no duty of care to petitioner. "The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Syl. Pt. 5, *Aikens, supra.* The Consortium Agreement did not guarantee that petitioners would receive funding; it was merely a way to apply for funding as a group. Respondent was authorized to choose its own project and to remove petitioners' project due to eligibility concerns, which could have jeopardized the State's entire funding. Thus, because respondent could make the choice to remove petitioners, the agreement did not create any duty on respondent's part to ensure petitioners would be funded. Having failed to establish a duty of care as a matter of law, the remaining elements of petitioners' negligence claim are immaterial.

5

Petitioner next argues that the circuit court erred by dismissing its breach of contract claim. "In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damage arose from the breach." *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 749 (N.D.W.Va. 2012). Additionally, "[l]oss of profits cannot be based on estimates which amount to mere speculation and conjecture but must be proved with reasonable certainty." Syl. Pt. 5, *State ex rel. Shatzer v. Freeport Coal Co.,* 144 W. Va. 178, 107 S.E.2d 503 (1959).

We find no error in the dismissal of petitioners' breach of contract claim. Under the terms of the Consortium Agreement, petitioners were not promised grant funding. As the circuit court correctly found, "the Consortium Agreement was simply a contractual mechanism to seek NSP grant funding as a group to the extent allowable under the law and consistent with applicable regulations." Despite the fact that respondent failed to provide the required sixty days notice to petitioners that they were to be removed from the Consortium, petitioners have failed to demonstrate how the inadequate notice caused them to suffer damages. Stated another way, petitioners presented no evidence that, had they received sixty days notice, they would have received the funding. Accordingly, dismissal of the breach of the contract claim on summary judgment was proper.

Petitioners' final argument on appeal is that the circuit court committed reversible error by applying a heightened standard of proof to their negligence and breach of contract claims. As support for this assignment of error, petitioner points to two questions that the circuit court asked during the summary judgment hearing. The court asked, "Who is the final authority that says [petitioners] are not eligible? Who do you call to the witness stand that says the Nance project was not, [and] never will be eligible?" Petitioners contend that these questions show that the lower court treated this case akin to a malpractice case, which would require expert testimony. Petitioners argue now that Petitioner Karen Nance could have testified, and other law witnesses and documents could have demonstrated that the project was eligible.

Contrary to petitioners' argument, the record in this case demonstrates that the circuit court did not render a poorly-informed, quick judgment. Rather, the circuit court did not issue a ruling on respondent's motion until it had held two summary judgment hearings; and, in the interim between the two hearings, required the parties to engage in additional discovery. Petitioners were given ample opportunity to bolster their claims, but failed to do so. There is nothing in the record or the circuit court's order that indicates that the circuit court applied a heightened standard of proof to petitioners' claims, as petitioners allege. Therefore, petitioners' final assignment of error is without merit.

For the foregoing reasons, we affirm the Circuit Court of Cabell County's August 12, 2016, order granting summary judgment in favor of respondent.

Affirmed.

**ISSUED:** May 19, 2017

6

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker